2002 UT App 405

**SOUTH SALT LAKE CITY,**
Plaintiff and Appellee,

v.

Trisha TERKELSON, Ruth Stone, Amanda Morris, and Penny Payne, Defendants and Appellants.

No. 20010760–CA.

Court of Appeals of Utah.

Nov. 29, 2002.

W. Andrew McCullough, McCullough & Associates, Midvale, for Appellants.

Sarah A. Giacovelli, Paul H. Proctor, and David M. Carlson, South Salt Lake City, for Appellee.

Before BENCH, ORME, and THORNE, Jr., JJ.

## OPINION

THORNE, Judge:

¶ 1 Trisha Terkelson, Ruth Stone, Amanda Morris, and Penny Payne (Defendants) argue that the City of South Salt Lake (the City) violated their due process rights when it altered its previously announced interpretation of its Sexually Oriented Business Ordinance and enforced that change without first providing Defendants notice. We reverse Defendants' convictions and remand for further proceedings.

## BACKGROUND

¶ 2 In December 1999, the South Salt Lake City Police Department directed undercover police officers to purchase "private sessions" with nude women at several local adult entertainment clubs (the Clubs). The purpose of the undercover operation was to verify that the employees were operating within the limits of the City's ordinance that restricted touching between patrons and employees "while performing."[1] The officers knew the Clubs were equipped with video equipment where they could remotely observe all private dances. However, rather than utilize the videos, the officers elected to participate in the private sessions themselves, instigating contact between Defendants and themselves, and then citing Defendants for allowing the contact.

¶ 3 The case was first heard in justice court. There, Defendants argued the City violated their due process rights when it altered its interpretation of the ordinance and enforced this change without first providing notice. Defendants filed a motion in limine, seeking to introduce extrinsic evidence of their prior communications with the City to prove that the City's present interpretation of the ordinance was different from its earlier interpretation. Defendants claimed that the City had previously reached an agreement with the Clubs and their attorney on the scope and reach of the ordinance. Specifically, Defendants alleged that the City led them to believe that touching was permitted between patrons and employees as long as: (1) Defendants were not dancing during the touching, (2) the patrons did not touch Defendants' genitalia, and (3) Defendants and the patrons remained standing or sitting on opposite sides of a partition. The court denied the motion, after which Defendants pleaded no contest and then appealed.[2]

---

1. South Salt Lake City Code provides as follows: It is unlawful for any sexually oriented business or sexually oriented business employee to:

   . . . .

   C. Allow, offer or agree to any sexually oriented business employee touching or being touched by any patron or customer while performing . . . except that any touching by sexually oriented business employees or customers of specified anatomical areas, whether clothed or unclothed, is prohibited at any time. . . .

South Salt Lake City, UT, Ordinances ch. 5.56, § 5.56.240 (1999).

2. Pursuant to Utah Code Ann. § 78–5–120 (Supp. 2002), all matters first heard in justice court are subject to de novo review in the district court. Thus, Defendants did not waive any right to appeal by pleading no contest in justice court. *See State v. Hinson*, 966 P.2d 273, 276 (Utah Ct.App.1998) (holding defendant did not waive

¶4 On de novo review, Defendants renewed their motions in limine. To preserve their due process challenge for further review, Defendants proffered testimony from both the Clubs' and the City's former attorneys, who had negotiated regarding the drafting, interpretation, and enforcement of the ordinance. Defendants also proffered the testimony of two police officers who had previously observed Defendants' work and had informed Defendants, through their employers, that they were in compliance with the ordinance. The trial court refused to admit this evidence, rejecting Defendants' argument that their due process rights were violated when the City applied the new interpretation of the ordinance to them without notice. Defendants appeal.

## ISSUE AND STANDARD OF REVIEW [3]

¶5 Defendants argue that the trial court erred when it found the ordinance constitutional as applied.[4] The constitutionality of an ordinance is a question of law, that we review for correctness, giving no deference to the trial court's determination. *See Greenwood v. North Salt Lake City,* 817 P.2d 816, 818 (Utah 1991).

## ANALYSIS

### A. Jurisdiction

¶6 As a threshold matter, we first address our limited jurisdiction over criminal appeals originating in justice court. "Utah case law clearly provides that neither this court nor the Utah Supreme Court has jurisdiction to hear an appeal from proceedings in the district court held pursuant to an appeal from the justice court unless the issues raised in the justice court 'involve[ ] the validity or constitutionality of an ordinance or statute.'" *State v. Hinson,* 966 P.2d 273, 276 (Utah Ct.App.1998) (alteration in original) (quoting *State v. Matus,* 789 P.2d 304, 305 (Utah Ct.App.1990) (per curiam)). Utah Code Annotated § 78-5-120(7) (Supp 2002) grants this court jurisdiction over appeals from justice court when "the district court rules on the constitutionality of a statute or ordinance."

¶7 At trial, Defendants explicitly attacked the constitutionality of the ordinance. Defendants argued that pursuant to *Bouie v. Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), their due process rights were violated when the City altered its interpretation and enforcement of the ordinance without notice. Stated more concisely, Defendants argued that the ordinance was unconstitutional as applied to them.[5] When Defendants proffered evidence to support their claim that the ordinance was unconstitutional as applied to them, the trial court refused to admit the evidence. In excluding the evidence the trial court explicitly found *Bouie* inapplicable and implicitly found the ordinance constitutional as applied. Because the trial court ruled on the constitutionality of the ordinance, we have jurisdiction over this matter.

right to appeal to district court when he entered voluntary guilty plea in justice court).

3. In their brief, Defendants frame the issue on appeal as follows: "Have Defendants been denied Due Process of Law, in violation of the Fourteenth Amendment to the United States Constitution, and/or Article I § 7 of the Constitution of Utah, as a result of the Court's refusal to hear extrinsic evidence of the meaning of the ordinance in question?" Read literally, this assignment of error suggests that the due process violation occurred at the time of trial when Defendants were not allowed to present certain evidence. We conclude that Defendants mean to argue that the City violated their due process rights when it changed its interpretation of the law without providing notice. In directing the trial court to address this later issue, we believe that any concerns Defendants may have about a denial of due process at the trial level will also be resolved.

4. Defendants also claim the ordinance is void for vagueness or for over-breadth in violation of the First Amendment of the United States Constitution and Article I, § 15 of the Utah Constitution. Because we conclude that the trial court should have considered Defendants' due process argument, we do not address these claims.

5. Defendants cite both the United States and Utah constitutional guarantees of due process in their brief. However, Defendants provide no substantive analysis of their claim under the Utah Constitution. Thus, we do not address Defendants' claims under the Utah Constitution. *See State v. Trane,* 2002 UT 97, ¶21 n. 2, 456 Utah Adv. Rep. 21.

## B. Due Process

¶ 8 We now turn to the merits of Defendants' claim that the City violated their due process rights. At trial, Defendants proffered testimony in an attempt to prove that the City had altered its interpretation of the ordinance without providing Defendants notice, but the trial court refused to admit this testimony. In deciding to exclude the evidence, and thereby implicitly acknowledging that the ordinance was constitutional as applied, the trial court relied solely upon *Bouie*.

¶ 9 In *Bouie,* several civil rights demonstrators were cited for criminal trespass for participating in a "sit in" demonstration. *See id.* at 348, 84 S.Ct. at 1699. The demonstrators sat at a segregated lunch counter and waited to be served. *See id.* at 348, 84 S.Ct. at 1700. The police came and asked the demonstrators to leave. *See id.* When the demonstrators refused, they were arrested and ultimately convicted of criminal trespass. *See id.* at 348–49, 84 S.Ct. at 1700.

¶ 10 On appeal, the Supreme Court overturned the convictions, concluding that the South Carolina courts had unconstitutionally expanded the scope of the trespass statute to include remaining at a location after being asked to leave, despite the fact that the statute had never before been so interpreted. *See id.* at 355–56, 84 S.Ct. at 1703–04. The Court concluded that the sudden change in the interpretation of the law violated the demonstrators' due process rights. *See id.* at 355, 84 S.Ct. at 1703.

¶ 11 Here, the trial court distinguished *Bouie,* finding that *Bouie* involved only an unforseen *judicial* interpretation of a statute, rather than an administrative or executive change in the City's interpretation of its own ordinance. However, after reviewing *Bouie* and its progeny, we conclude that the trial court's reading of *Bouie* is too restrictive.

¶ 12 For example, in *United States v. Pennsylvania Industrial Chemical Corp.,* 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973), a corporation was convicted for violating a statute that prohibited the discharge into navigable waters of "refuse matter of any kind ... other than that flowing from

streets and sewers." *Id.* at 672, 93 S.Ct. at 1815. The Army Corps of Engineers had earlier construed the statute to address only the discharge of refuse that "affected navigation" and the corporation had relied upon this interpretation when conducting business. *Id.* at 673, 93 S.Ct. at 1816. The district court refused to admit evidence regarding the corporation's reliance upon the Army Corps' construction of the statute. On appeal, the Supreme Court reversed the conviction and remanded the case with directions that the trial court consider the evidence. *Id.* at 675, 93 S.Ct. at 1817. The Court stated: "The Corps is the responsible administrative agency under the 1899 Act, and 'the rulings, interpretations and opinions of the [responsible agency] ..., while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which ... litigants may properly resort for guidance.' " *Id.* at 674, 93 S.Ct. at 1816 (alterations in original) (citation omitted).

¶ 13 Similarly, in *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), the defendant arrived at a local courthouse to protest the arrest of several students. *Id.* at 564–65, 85 S.Ct. at 481. The police advised the defendant that he could protest on the west side of the street, so long as he was 101 feet away from the courthouse. *See id.* at 571, 85 S.Ct. at 484. The defendant then moved his protest to the specified location, where he was arrested and convicted for demonstrating too close to the courthouse. *See id.* at 569–70, 85 S.Ct. at 483–84. The Supreme Court reversed his conviction and emphasized that the city's highest ranking police official, in the presence of both the sheriff and the mayor, was the person who had advised the defendant where he could protest. *See id.* at 571, 85 S.Ct. at 484. The Court concluded that the defendant was "led to believe that his demonstration on the far side of the street violated no statute," so it violated due process to prosecute him for the conduct. *See id.* at 572–73, 85 S.Ct. at 485.

¶ 14 As these cases illustrate, in the instant case, the trial court unnecessarily restricted the scope of *Bouie.* The core idea expressed in *Bouie,* as well as the cases that followed, is

that fair notice is essential to the constitutional enforcement of a law. *See, e.g., Bouie,* 378 U.S. at 351, 84 S. Ct at 1701 ("The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."); *Cox,* 379 U.S. at 571, 85 S.Ct. at 484 ("[T]o sustain appellant's later conviction for demonstrating where they told him he could 'would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him.' ") (quoting *Raley v. Ohio,* 360 U.S. 423, 426, 79 S.Ct. 1257, 1260, 3 L.Ed.2d 1344 (1959)). Thus, we conclude that the trial court erred when it found *Bouie* inapplicable to the case at bar. Defendants proffered evidence of the Clubs' participation in the drafting and interpretation of the ordinance. Defendants also proffered the testimony of two police officers who previously had observed Defendants perform and who would have testified that Defendants were in compliance with the previous interpretation of the ordinance. Thus, Defendants proffered evidence, which if believed by the trier of fact, would establish that they did not have fair notice of the scope and reach of the ordinance and that their due process rights were violated.

■ ¶ 15 We caution, however, that a determination of whether a citizen's due process rights have been violated because of lack of fair notice is extremely fact-intensive. Other courts that have addressed the issue have considered, among other things, the rank, title, and position of the person providing advice or legal interpretation; the actual or apparent authority of the person providing advice or legal interpretation; whether the state or its agent actively misled a citizen; and the reasonableness of the citizen's reliance. *See, e.g., Raley,* 360 U.S. at 437, 79 S.Ct. at 1266 (noting that the party who provided erroneous advice was "Chairman of the Commission, who clearly appeared to be the agent of the State in a position to give such assurances"); *United States v. Gutierrez–Gonzalez,* 184 F.3d 1160, 1168–69 (10th Cir.1999) (finding illegal immigrant's reliance upon statements by INS worker as well as a non-governmental agency employee unrea-

sonable); *United States v. Spires,* 79 F.3d 464, 466–67 (5th Cir.1996) (noting that task force agent was not an authorized federal government agent); *United States v. Nichols,* 21 F.3d 1016, 1018 (10th Cir.1994) (noting that "[t]here must be an 'active misleading' by the government agent and actual reliance by the defendant" (citation omitted)); *United States v. Austin,* 915 F.2d 363, 366–67 (8th Cir.1990) (holding that a license to sell firearms does not "transform [pawn shop owners] into government officials, at least for purposes of the entrapment by estoppel defense"); *United States v. Brady,* 710 F.Supp. 290, 294–95 (D.Colo.1989) (holding it would violate due process to convict for weapons possession a two-time felon who had been incorrectly told by a judge that he could use a gun for the vocation of hunting and trapping).

■ ¶ 16 Here, the trial court excluded all Defendants' evidence regarding the City's alleged change in the interpretation and enforcement of the ordinance and made no factual findings regarding such evidence. Because a determination of whether the Defendants' due process rights were violated is fact-intensive, without factual findings, we cannot conduct a meaningful review of the trial court's decision. We therefore remand this case for further proceedings. Upon remand, the trial court should consider all of the evidence necessary to provide a clear picture of the totality of the circumstances surrounding the drafting, interpretation, and previous enforcement of the ordinance. The trial court may consider, among other things, the identity and authority of the person who informed Defendants regarding the scope and reach of the ordinance, the specificity of such information, how such information was transmitted, whether the City notified Defendants of its intent to change its interpretation and enforcement of the ordinance, and the reasonableness of Defendants' reliance, if any.

## CONCLUSION

¶ 17 We reverse and remand, directing the trial court to consider Defendants' due pro-

cess claim and to create the factual findings necessary for proper review of this claim.

¶ 18 I CONCUR: GREGORY K. ORME, Judge.

¶ 19 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.