**2018 UT App 198**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RORY DUSTIN PENCE,
Appellant.

Opinion
No. 20170026-CA
Filed October 18, 2018

Sixth District Court, Richfield Department
The Honorable Paul D. Lyman
No. 141600309

Caleb Proulx, Attorney for Appellant

Dale P. Eyre and Casey W. Jewkes, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1    After separating from Defendant Rory Dustin Pence, Victim obtained a protective order against Pence. The protective order instructed Pence to "Stay Away" from the marital home but allowed him visitation with the couple's children. Visitation was to take place at Pence's parents' home, where Pence was living, which was across the street from the marital home.

¶2    In August 2014, Victim took the children to a city park. While they were there, Pence drove by and yelled at Victim. Afterward, Victim drove home with the children and noticed that Pence had driven to his parents' home, parked his car in front of the marital home, and made his way onto the sidewalk of the marital home. Victim then called law enforcement while

she and the children waited in the vehicle. Upon law enforcement's arrival, Victim exited the vehicle and Pence began arguing with Victim and law enforcement. He "walked right up to Victim" and, as she testified, was "right in [her] face." Pence was later charged with two counts of violating the protective order—one count related to the August 2014 encounter and the second count related to similar events that occurred in September 2014.

¶3     Prior to trial, Pence filed a motion to dismiss, arguing that the protective order language was void for vagueness and did not give fair notice to Pence of the prohibited conduct. The trial court denied the motion. At trial, Pence requested an expanded version of an elements jury instruction, but the court denied his request. The jury convicted Pence of the count arising from the August events, but acquitted him of the second count arising from the September events. He appeals his conviction. We affirm.

BACKGROUND[1]

¶4     In February 2013, Victim filed for divorce. At the same time, she also sought a protective order against Pence, which was granted in July 2013. The protective order awarded Victim temporary possession of the marital home and ordered Pence to "Stay Away" from Victim, her vehicle, job, school, and the marital home. The protective order also ordered Pence not to commit, try to commit, or threaten to commit any form of violence against Victim, including "stalking, harassing, threatening, physically hurting, or causing any other form of abuse." In addition to those provisions, the protective order specifically precluded Pence from "contact[ing]" or

---

1. "On appeal from a criminal conviction, we recite the facts from the record in the light most favorable to the jury's verdict." *State v. Pham*, 2015 UT App 233, ¶ 2, 359 P.3d 1284.

"communicat[ing] in any way with [Victim]," except regarding matters relating to their minor children. The court awarded Victim temporary custody of the children and gave Pence permission to have supervised parent-time. Parent-time was to take place at Pence's parents' home, where Pence was living, located across the street from the marital home.

¶5     In August 2014, Pence was scheduled to have parent-time with the minor children. Before the commencement of parent-time, Victim picked up dinner with the children. While she and the children were eating their dinner at a nearby park, Victim noticed Pence's blue Mustang drive by. The car slowed down, and Victim saw Pence driving the vehicle. Pence yelled something at Victim, "revved his engine and then took off."

¶6     After Victim and the children finished their meal, Victim drove back to the marital home with the children. When she arrived, she noticed Pence standing outside of his parents' home across the street. Victim parked her car and saw that Pence's car was parked in front of the marital home. After parking, Victim observed Pence walk across the street toward the marital home and begin pacing by his car. Victim and the children remained in her car, and Victim called law enforcement.

¶7     An officer (Officer) responded within minutes and met Victim and the children at her vehicle. Victim told Officer that she believed Pence was violating the protective order. Officer testified that he observed Pence "standing by the corner in front of the [marital] home." While Victim was talking to Officer, Pence approached Victim's vehicle and was "right in [Victim's] face." Pence then indicated to Officer that he was there to take the minor children for parent-time. Officer told Pence to move his vehicle, to which Pence responded, "[T]his is my house, my trees. And I park my car in the shade. I don't have to move it. And I will not." During this conversation, Pence attempted to "grab" one of the minor children, but the child refused to go with him and "pulled back."

¶8 After arguing with Officer and Victim, Pence stated that he "couldn't stand looking at [Victim's] face" and walked back to his parents' house across the street. After speaking to Officer for several more minutes, Victim walked the children across the street to Pence's parents' home for parent-time.

¶9 Pence was subsequently charged with two counts of violating a protective order—one count related to the August 2014 events and the other count related to events that took place in September 2014. *See* Utah Code Ann. § 76-5-108 (LexisNexis Supp. 2014). Prior to trial, Pence filed a motion to dismiss in which he argued that the protective order language of "Stay Away" from the marital home was void for vagueness as applied. Specifically, Pence argued that the directive to "Stay Away" did not give him fair notice of what conduct was prohibited, because he was to exercise parent-time with his children at his parents' home directly across the street from the protected marital home. The trial court denied the motion.

¶10 Also prior to trial, Pence asked the court to use his version of the elements jury instruction. His requested instruction included additional language not found in Utah Code section 76-5-108, highlighted in paragraph 4 below, that stated,

> [The jury] cannot convict Mr. Pence of [violating the protective order] unless, based on the evidence, [the jury] find[s] beyond a reasonable doubt each of the following elements:
>
> 1. That on or about August 15, 2014, within Sevier County, State of Utah, Mr. Pence was subject to a Protective Order;
>
> 2. That Mr. Pence was properly served with the protective order;
>
> 3. That the protective order prohibited the conduct Mr. Pence is accused of;

4. *That the protective order described the prohibited conduct with sufficient[] clarity to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden by the protective order;*

5. That Mr. Pence intentionally or knowingly violate[d] the protective order.

(Emphasis added.)

¶11 The court denied Pence's request, concluding that it was unnecessary for a jury to find elements beyond those required by Utah Code section 76-5-108. Instead, the court gave the State's elements instruction, which stated,

Before [the jury] can convict the Defendant of VIOLATION OF A PROTECTIVE ORDER . . . [the jury] must find from the evidence beyond a reasonable doubt, all of the following elements of that crime:

1. That on or about August 15, 2014, within Sevier County, State of Utah, the Defendant was subject to a Protective Order;

2. That the Defendant was properly served with the Protective Order; and

3. That the Defendant knowingly or intentionally violated the Protective Order.

Additionally, the court gave a separate mens rea instruction, with language taken directly from Utah Code section 76-2-103. This instruction defined "Intentional and Knowing Conduct" under Utah law. *See id.* § 76-2-103 (2012). The remaining instructions were stipulated to by the parties.

¶12     At trial, Officer was asked if he was able to determine during his investigation whether Pence had been served with the protective order, to which Officer answered affirmatively. Officer next testified to the service of the protective order, without any objection from Pence, stating, "We had the return of service that was served. And it was also through dispatch, advised that it had been served through the state system."[2] Next, Officer identified State's Exhibit 6 (Exhibit 6), which was received as a single document although it was made up of seven pages. The first page of the exhibit was a ruling of the district court outlining which provisions of the protective order would expire after 150 days and which provisions would be permanent. The order stated that it was intended to be a permanent protective order. The next six pages consisted of a copy of the protective order itself. Officer then catalogued the contents of Exhibit 6, which included the protective order, and Exhibit 6 was admitted without objection.

¶13     At the close of the State's case, Pence filed a motion for judgment as a matter of law, arguing that there was insufficient evidence of service of the protective order. The court denied the motion. Subsequently, the jury found Pence guilty on the August 2014 count and not guilty on the September 2014 count. Pence appeals.

ISSUES AND STANDARDS OF REVIEW

¶14     Pence raises three issues on appeal. First, he contends that the trial court erred in denying his motion to dismiss, which was premised on the argument that the language in Utah Code

---

2. We acknowledge that Officer's statement was hearsay, *see* Utah R. Evid. 801, but because there was no objection below, it was admitted and available for the jury's consideration, *see id.* R. 103(a). No claim of plain error or ineffective assistance of counsel has been made in connection with this testimony or Exhibit 6.

section 76-5-108 was unconstitutionally vague as applied by the protective order. "Constitutional challenges to statutes present questions of law, which we review for correctness," *Provo City Corp. v. Thompson*, 2004 UT 14, ¶ 5, 86 P.3d 735, with no deference to the trial court's ruling, *South Salt Lake City v. Terkelson*, 2002 UT App 405, ¶ 5, 61 P.3d 282.

¶15 Second, he argues that the trial court erred by refusing to give his proposed jury instruction. A court's ruling on a proposed jury instruction is reviewed for correctness. *State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892. We view jury instructions "in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *Id.* (cleaned up).

¶16 Finally, Pence contends that the trial court erred in denying his motion for judgment as a matter of law, which was premised on the argument that there was insufficient evidence that the protective order was served upon him. "We will reverse a guilty verdict only when the evidence . . . is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *State v. MacNeill*, 2017 UT App 48, ¶ 51, 397 P.3d 626 (cleaned up).


ANALYSIS

I. Vagueness Challenge

¶17 Pence first claims that Utah Code section 76-5-108 is unconstitutionally vague as applied because the protective order issued by the district court fails to define the precise locations he is prohibited from visiting, stating only that Pence must "Stay Away" from Victim, her vehicle, job, school, and the marital home. In short, Pence asserts that the command "Stay Away" is vague. We are unpersuaded by Pence's argument.

¶18  The State argues that Pence's vagueness challenge is unpreserved because he challenges the language of the protective order, rather than the language of Utah Code section 76-5-108. We acknowledge that courts have long held that the vagueness doctrine only applies to statutes, not to court orders. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."); *State v. Green*, 2004 UT 76, ¶ 43, 99 P.3d 820 (same). But the record in this case is unclear regarding whether Pence is challenging the order or the statute. Thus, we first analyze the issue as if Pence had properly challenged the statute. Then, assuming without deciding that the vagueness doctrine applies to court orders in addition to statutes, we analyze Pence's argument that the language of the protective order itself was unconstitutionally vague.

¶19  The United States Supreme Court has stated that when a party raises both facial and as-applied vagueness challenges, "[a] court should . . . examine the complainant's conduct before analyzing other hypothetical applications of the law." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982). "This is because a plaintiff who engages in some conduct that is clearly proscribed by statute cannot complain of the vagueness of the law as applied to the conduct of others." *State v. Tulley*, 2018 UT 35, ¶ 55 (cleaned up). While it is unclear from Pence's briefing which type of challenge he asserts, we analyze his argument as an as-applied challenge.[3]

---

3. Based on our conclusion that Pence's as-applied challenge fails, any alleged facial challenge fails as well. *See State v. MacGuire*, 2004 UT 4, ¶ 12, 84 P.3d 1171 ("A statute that is clear as applied to a particular complainant cannot be considered

(continued…)

¶20    To survive a vagueness challenge, a statute must "(1) define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement, and (2) establish minimal guidelines that sufficiently instruct law enforcement so as to avoid arbitrary and discriminatory enforcement." *Id.* ¶ 54 (cleaned up). Pence has failed to establish that the statute violates either prong of this test.

A.    Notice of Prohibited Conduct

¶21    We first examine whether the language of Utah's protective order statute is so vague that Pence would have had inadequate notice that his conduct toward Victim—including, but not limited to, yelling at Victim while driving past her, approaching Victim's vehicle aggressively, and getting "right in [Victim's] face"—had the potential to violate the protective order issued against him.

¶22    The statute at issue, Utah Code section 76-5-108, states, in relevant part,

> Any person who is the respondent or defendant subject to a protective order, child protective order, ex parte protective order, or ex parte child protective order . . . who intentionally or knowingly violates that order after having been properly served, is guilty of a class A misdemeanor, except as a greater penalty may be provided . . . .

---

(…continued)
impermissibly vague in all of its applications and thus will necessarily survive a facial vagueness challenge.").

Utah Code Ann. § 76-5-108 (LexisNexis Supp. 2014). This statute makes clear that anyone who intentionally or knowingly violates a protective order, after being properly served, is guilty of violating the statute. *Id.* It specifically defines the types of protective orders and describes the act required to violate the statute. Pence cannot persuasively argue that he would not have known that yelling at Victim, approaching her, and getting "right in [her] face" would constitute acts sufficient to violate the protective order.

¶23    Moreover, assuming without deciding that the vagueness doctrine applies to court orders in addition to statutes, we disagree with Pence's argument that "ordinary people" would not know "what conduct is prohibited," *Tulley*, 2018 UT 35, ¶ 54 (cleaned up), by the "Stay Away" language used in the protective order. Any ordinary person would know that a protective order directing a party to "Stay Away" from someone or something means to avoid all contact with that person or thing. *See State v. Norcross*, 1999 UT App 100U, 1999 WL 33244751, para. 4–5 (per curiam) (affirming a conviction for violation of a protective order where the defendant was required to "stay away" from the property because he attempted to harass the victim by riding a bicycle in the street in front of the property and stopping across the street). Because Pence's conduct toward Victim—yelling, approaching, and harassing—clearly violated the protective order, it is unnecessary to describe what degree of contact would have been appropriate between them. *See Village of Hoffman Estates*, 455 U.S. at 495 ("A [party] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").[4]

---

4. Pence also argues that we should apply the rule of lenity, but he fails to recognize that "the rule of lenity is not implicated unless a statute is ambiguous." *State v. Rasabout*, 2015 UT 72, ¶ 22, 356 P.3d 1258. Here, Pence's contention fails because the statute is unambiguous, *see supra* ¶¶ 20–22, and, moreover, his

(continued…)

B.     Absence of Arbitrary and Discriminatory Enforcement

¶24    Having concluded that the statute is sufficiently definite to have notified Pence that his conduct was prohibited, we next examine whether the protective order statute encouraged arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) (holding that the void for vagueness doctrine requires the legislature to "define the criminal offense . . . in a manner that does not encourage arbitrary and discriminatory enforcement," and that to avoid unconstitutional vagueness, a statute must "establish minimal guidelines to govern law enforcement" (cleaned up)); *see also State v. Green*, 2004 UT 76, ¶ 50, 99 P.3d 820.

¶25    Here, Pence argues that "[w]ith no criteria to rely upon in the [protective order] beyond the injunction to '[S]tay [A]way,' [he] was left to guess how he was to interpret the requirement to have parent-time across the street in a manner not violative of the [protective order]." This argument fails for two reasons. First, Pence's contention lacks merit because "Stay Away" is not found in the *statute*, but is instead found in the protective order. Unlike statutes, which apply to everyone within the jurisdiction, orders are tailored to individuals. This concept gives courts wide discretion to vary their language and degrees of severity to the needs of the case. Here, because the language Pence challenges is found in the protective order rather than the statute, the vagueness doctrine is arguably inapplicable.

¶26    Second, even assuming—again, without deciding—that the vagueness doctrine applies to court orders in addition to statutes, the protective order is sufficiently definite so as to discourage arbitrary and discriminatory enforcement. Pence asserts that because the protective order did not expressly set out

---

(…continued)
three-sentence argument is inadequately briefed. *See* Utah R. App. P. 24(a)(8).

the conduct from which he was prohibited, it was open to interpretation. We disagree. "In an as applied challenge, . . . we . . . focus on the particular conduct at hand and not on the possible conduct of hypothetical parties." *Green*, 2004 UT 76, ¶ 51. Based on the facts of this case, we conclude that any "reasonable law enforcement official acquainted with [Pence's] behavior" could determine that Pence's actions violated the protective order. *See State v. Tulley*, 2018 UT 35, ¶ 73 (cleaned up).

¶27    The relevant statute specified that any person subject to a protective order, who intentionally or knowingly violated that order, after having been properly served, was guilty of violating a protective order. *See* Utah Code Ann. § 76-5-108 (LexisNexis Supp. 2014). Based on this statute, law enforcement officials would not be "left to pursue their own personal predilections in determining the applicability" of the statute to the facts at hand, because Pence's conduct was so clearly prohibited by the protective order. *See Green*, 2004 UT 76, ¶ 52. He drove by Victim and yelled at her while she was at the park, he approached Victim's vehicle, getting "right in [Victim's] face," and he attempted to "grab" one of the minor children while in Victim's presence. This type of behavior violated the protective order and, therefore, left no room for interpretation by law enforcement officials. Accordingly, Pence has failed to demonstrate that both the statute and the protective order were unconstitutionally vague as applied to him.

## II. Jury Instruction

¶28    Next, Pence argues that the court erred by not adopting his version of the elements jury instruction, which contained two additional elements required to find him guilty: "[t]hat the protective order prohibited the conduct Mr. Pence is accused of" and "[t]hat the protective order described the prohibited conduct with sufficient[] clarity to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden by the protective order."

¶29    In contrast, the instruction given by the trial court tracked the exact language of Utah Code section 76-5-108, which states that "[a]ny person who is the respondent or defendant subject to a protective order, . . . who intentionally or knowingly violates that order after having been properly served, is guilty of a class A misdemeanor." Utah Code Ann. § 76-5-108 (LexisNexis Supp. 2014). "Intentionally or knowingly" was defined in a separate jury instruction with language taken directly from Utah Code section 76-2-103, which explains knowing and intentional conduct under Utah law. *See id.* § 76-2-103 (2012). The remaining instructions were stipulated to by the parties.

¶30    "[E]rrors in jury instructions—even instructions going to the elements of a charged crime—require harmless-error analysis." *State v. Garcia*, 2017 UT 53, ¶ 40, 424 P.3d 171. Jury instructions require no particular form so long as they accurately convey the law. *State v. Marchet*, 2009 UT App 262, ¶ 23, 219 P.3d 75. "To determine if jury instructions correctly state the law, we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *State v. Painter*, 2014 UT App 272, ¶ 6, 339 P.3d 107 (cleaned up).

¶31    Here, when considered as a whole, the jury instructions fairly and accurately instructed the jury as to the applicable law. All of the elements required in Utah Code section 76-5-108 were included in the elements jury instruction given by the trial court. The language requested by Pence is not found in the statute. Therefore, Pence has failed to show that the instructions, as given, were an incorrect or incomplete statement of the law.[5]

---

5. Pence also contends that the denial of his requested jury instruction that contained additional elements prevented the jury from making the mens rea finding required by the constitution. But Pence conceded at trial that "intentionally and knowingly" were from the statute and that they were acceptable. Thus, his argument is unpreserved. Further, even if we assume

(continued…)

Accordingly, the trial court did not err in rejecting the additional proposed language in the elements instruction.

### III. Proof of Service

¶32 Finally, Pence contends that the trial court erred in denying his motion for judgment as a matter of law, which was premised on insufficient evidence of service. When considering a sufficiency of the evidence claim, "we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Nielsen*, 2014 UT 10, ¶ 46, 326 P.3d 645 (cleaned up). "We reverse only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *Id.* ¶ 30 (cleaned up).

¶33 The premise of Pence's insufficient evidence argument is that the State's exhibit was inadequate as proof of proper service of the protective order, one of the required elements of Utah Code section 76-5-108. *See* Utah Code Ann. § 76-5-108 (LexisNexis Supp. 2014). We simply disagree, both because the exhibit itself is sufficient and because other evidence—which Pence ignores—supports the verdict. Exhibit 6 was admitted into evidence as a single document that Officer represented was served upon Pence. A reasonable jury could have relied on Exhibit 6 alone to find that the protective order had been served. But there was more. Pence's own witness (Witness) testified that on August 14, Pence asked her to "drop him off [at an old church building instead of going with Witness to park his car outside the marital home] because of the protective order." This testimony shows Pence's full awareness of the protective order.

---

(…continued)
that his concession was made by mistake, it constituted invited error, which precludes our review. *See State v. Moore*, 2012 UT App 227, ¶ 5, 285 P.3d 809.

¶34 Also, without objection, Officer testified to the service of the protective order, stating, "We had the return of service that was served. And it was also through dispatch, advised that it had been served through the state system." While this evidence is conclusory and hearsay, it nevertheless is evidence that the jury could consider in determining that the protective order had been served because no objection was made. With an evidentiary basis upon which the jury could rely, especially when drawing all inferences in favor of the verdict, the trial court correctly denied the motion for judgment as a matter of law. *See State v. Gonzalez*, 2015 UT 10, ¶¶ 33–34, 345 P.3d 1168 (holding that the trial court "correctly denied" a motion for directed verdict where there was sufficient evidence for a jury to find that the defendant's actions met the requisite elements of the crime).

CONCLUSION

¶35 For the aforementioned reasons, we conclude that Utah Code section 76-5-108 is not unconstitutionally vague as applied. We further hold that the jury instructions fairly instructed the jury on the law applicable to the case. And finally, we affirm the trial court's holding that there was sufficient evidence of service of the protective order. Accordingly, we affirm Pence's conviction.

———————