2021 UT App 17

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
AHMED HAWKEN RASHID,
Appellant.

Opinion
No. 20190682-CA
Filed February 19, 2021

Third District Court, Salt Lake Department
The Honorable Amber M. Mettler
No. 181909592

Melinda Dee, Attorney for Appellant

Simarjit S. Gill and Hyrum J. Hemingway,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

ORME, Judge:

¶1     Ahmed Hawken Rashid challenges his conviction for stalking. He contends the district court erred in rejecting his argument that section 76-5-106.5 of the Utah Code was unconstitutionally vague as applied to him. He also argues that the court erred in excluding his expert witness. We see no error in either respect and affirm.

## BACKGROUND[1]

¶2 One Friday evening in 2018, a woman (Victim) was walking to her car after work. On her way, she saw Rashid also walking to his distinctive red car parked nearby. As Victim got into her car, she observed Rashid, now in his car, appearing to take pictures of her with his cell phone. Starting to feel unsafe, Victim pulled out of the parking lot and noticed that Rashid followed her. Seeing that Rashid was still following her even after she had taken a couple of turns and gotten on the interstate, Victim called her mother to ask what she should do. Victim's mother advised her to try and lose him by taking the next exit, which she did, but Rashid still continued to follow her. At this point, Rashid "was directly behind" Victim, which caused her to "fear for [her] safety." Victim then took a sharp left and Rashid finally stopped following her.

¶3 The following Monday, while leaving work, Victim again saw Rashid in his car, which was parked next to hers. This caused her to be "worried because [she] didn't know why he would be back there again." She "felt like he was watching [her]." Victim then went back into her workplace and asked a coworker to accompany her to her car. They agreed that Victim would return to the parking lot if Rashid again followed her when she left. Victim then proceeded to get in her car and pull away while her coworker "was watching and facing the red [car], kind of staring at [Rashid]." This time, Rashid did not follow Victim.

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

¶4　The next day, Victim went to the property manager of her workplace and viewed security footage from the first incident. In that video, Victim observed Rashid take pictures of her license plate and "walk across to [her] car and lay down and put a tracker on [her] car," which she described as "probably one of the scariest things I've ever seen." This made Victim feel "paranoid" and distressed because the tracker had been on her car over the weekend, which caused her to believe "that [Rashid] knew where [she] lived" and "where [she] was going all weekend." Victim then called the police.[2]

¶5　When the police arrived, they searched the undercarriage of Victim's car and found the GPS tracking device Rashid had installed. The police determined that a local private detective agency was the owner of the device. The manager of the agency (Manager) told the police that the agency had "been hired to do . . . a private investigation which involved placing the GPS device" on Victim's car and that he had tasked Rashid with that job.

¶6　The State subsequently charged Rashid with stalking, a class A misdemeanor, under Utah Code section 76-5-106.5. Rashid moved the district court to dismiss the charge, claiming "that the stalking statute as it applies to him is vague because it is void of any language that indicates his actions were for a legitimate purpose," and "[i]f the statute included this language, he would not be prosecuted for stalking." Rashid pointed out

---

2. Victim testified that this entire experience was extremely distressing and that it had a lasting impact on her. At trial, she stated, "I've been more paranoid than I've ever been. I've written down license plate numbers in my phone thinking maybe they are following me, but . . . I don't know. . . [a]nd then I just erase them, but . . . for the last year and a half it's been nonstop paranoia."

that "some [other] state stalking statutes specifically exempt private investigators . . . when they are acting within the scope of their employment." He also noted that while "there is not an affirmative defense nor an exemption for private investigators to a stalking charge in Utah, the law does not allow a civil stalking injunction against private investigators," and thus "[i]t is confusing whether [he] could be charged under the existing [criminal] stalking statute." Rashid insisted that "[a]ll of his actions were for a legitimate purpose, to fulfill a contract [with a client], and were all done within the scope of his employment," and "[t]hus, the way the stalking statute is written it did not provide sufficient notice to a person of ordinary intelligence that these actions were prohibited." Finally, Rashid asserted that the State's failure to charge Manager, who directed Rashid's actions, was evidence of arbitrary enforcement.

¶7    At a subsequent hearing, the district court denied Rashid's motion. The court stated:

> As I read the statute there is no exception for someone acting as a private investigator whether or not they have a license. There is no exception for whether or not you are acting under a "legitimate purpose," whatever that might mean, and I think a person of reasonable intelligence reading the statute would see that there is no exception for those things. So I don't think there is anything . . . vague about it at all.

¶8    Before trial, Rashid filed a motion seeking approval of testimony from an expert witness (Expert), whom Rashid intended to call at trial. Rashid asserted that Expert would testify "regarding correct private investigator procedures and practices and managing apprentices and interns training in the private investigator field." Rashid sought to establish, through Expert, that he was not properly trained and "was being basically sent,

as a civilian, to engage in . . . acts that he had no business engaging in" and that if he had been properly trained (1) "he wouldn't have put himself in the situation . . . that led to the stalking crime[]," (2) he would not have accepted the job of tracking Victim, and (3) he would have known that his actions would constitute stalking.

¶9     The district court denied the motion, stating as follows:

> I do not see how information concerning a properly-run, well-organized private investigator agency is relevant to whether Mr. Rashid engaged in the acts described in the information and knew or should have known that the course of conduct in which he engaged would cause a reasonable person to fear for that person's safety . . . or to suffer emotional distress.
>
> If he wants to offer testimony about his mental state and what he knew or should have know or whatever/however you want to phrase it then that's on him. But I don't see how an expert opining on what a private investigator agency should or should not be doing is relevant to those questions. . . . So the Court is going to exclude it under Rule 402.
>
> To the extent it has any relevance at all, I think it's so minimal that any such relevance is substantially outweighed by the likelihood that the evidence would confuse the issues, mislead the jury, cause undue delay and waste time. So I think it's also inadmissible under Rule 403.

¶10    At trial, Victim, Manager, and Rashid all testified. Manager's testimony was limited because he invoked his Fifth Amendment right against self-incrimination in response to

nearly every question asked of him. Rashid testified that Manager instructed him to place the GPS tracking device on Victim's car. He stated that Manager was "supposed to train [him]" but he did not "think he trained [him] well" and that Manager had informed him that he did not need a private investigator license to install GPS tracking devices. Rashid also explained that he received his private investigator license a few days after the incidents involving Victim but that he had believed he could practice under Manager's supervision before obtaining his own license. He testified that "as part of [his] training," it was his "understanding that [he was] immune[] from prosecution for these installs" and that Manager had told him that it was not illegal to install GPS tracking devices. Rashid explained that he "fe[lt] sorry . . . for what happened and how it made [Victim] feel that day," but he "was simply just doing what [he] was told to do."

¶11　A jury convicted Rashid as charged. Following the conviction, Rashid moved for a new trial, asserting that the district court's earlier rulings denying his motion to dismiss and excluding Expert from testifying prejudiced his right to a fair trial. The court denied the motion "for all the same reasons it has previously articulated." It did add, however, that given Rashid's testimony at trial, any conceivable error in excluding Expert's testimony was harmless because Expert's "testimony would have been, at best, cumulative of [Rashid's] own testimony."

¶12　Rashid appeals.

ISSUES AND STANDARDS OF REVIEW

¶13　Rashid raises two issues. First, he asserts that the district court erred in ruling that Utah Code section 76-5-106.5 was not unconstitutionally vague as applied to him. Rashid's constitutional challenge presents a question of law that we review de novo, "recognizing that all statutes are presumed to

be constitutional and the party challenging a statute bears the burden of proving its invalidity." *State v. Roberts*, 2015 UT 24, ¶ 16, 345 P.3d 1226 (quotation simplified).

¶14    Second, Rashid contends that the court erred in excluding Expert's testimony. "We review a court's decision regarding the admissibility of expert testimony for an abuse of discretion." *Harrison v. SPAH Family Ltd.*, 2020 UT 22, ¶ 22, 466 P.3d 107.

ANALYSIS

I. Constitutionality

¶15    "A criminal statute is not unconstitutionally vague if it defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *State v. Garcia*, 2017 UT 53, ¶ 56, 424 P.3d 171 (quotation simplified). Moreover, "when a vagueness challenge does not involve First Amendment freedoms," as Rashid acknowledges is the case here, "this court examines the statute only in light of the facts of the case at hand." *See id.* (quotation simplified).

¶16    We first address whether the challenged statute defines stalking with sufficient definiteness that ordinary people would understand what actions are prohibited. Next, we consider whether the language of the statute at issue encourages arbitrary and discriminatory enforcement.

A.    Sufficient Definiteness

¶17    Rashid claims that Utah Code section 76-5-106.5 is insufficiently definite to have put him on notice that his conduct was prohibited. The statute provides that

> [a] person is guilty of stalking who intentionally or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person: (a) to fear for the person's own safety . . . or (b) to suffer other emotional distress.

Utah Code Ann. § 76-5-106.5(2) (LexisNexis 2018). "Course of conduct" is defined, in relevant part, as

> two or more acts directed at or toward a specific person, including:

>> (i) acts in which the actor follows, monitors, observes, photographs, surveils, threatens, or communicates to or about a person, or interferes with a person's property:

>>> (A) directly, indirectly, or through any third party; and

>>> (B) by any action, method, device, or means[.]

*Id.* § 76-5-106.5(1)(a).

¶18    Rashid asserts that this language is "confusing because a person can be stalked through a third person" and "[a] person of ordinary intelligence who works as a private investigator or is supervised by a private investigator would be confused as to whether the stalking statute applies to them, their employer, or whoever hired them." We disagree. The statutory language was not vague as applied to Rashid. There is no reasonable basis for confusion about whether *his* actions could result in a stalking conviction. The statute makes absolutely clear that Rashid could be convicted of stalking if he "directly" undertook following, monitoring, observing, photographing, or surveilling Victim, on

two or more occasions, if he knew or should have known that by so doing it would have caused "a reasonable person . . . to fear for the person's own safety or . . . to suffer other emotional distress." *See id.* § 76-5-106.5(1)(a), (2). Based on this language, there is no ambiguity about whether Rashid could be charged for his conduct toward Victim, and any confusion about other hypothetical circumstances, including whether Manager could also be charged, are not at issue in this as-applied challenge.

¶19 Rashid also argues "that the stalking statute as it applies to him is vague because it is void of any language that exempts his actions if they were for a legitimate purpose." Rashid contends that while an exemption does not exist under section 76-5-106.5 for private investigators, confusion arises because the separate statutory provision dealing with civil stalking injunctions, found in a different title of the Utah Code, provides that "[s]talking injunctions may not be obtained against . . . licensed private investigators, acting in their official capacity." *See* Utah Code Ann. § 77-3a-101(1) (LexisNexis 2018).[3] In light of that provision, Rashid argues that he could not know that he might be charged under the criminal stalking statute. We disagree for three reasons.

¶20 First, and most importantly, unlike the civil stalking injunction provision, which explicitly provides a defense for licensed private investigators,[4] Utah Code section 76-5-106.5

---

3. By means of an amendment in 2020, the civil injunction statute has been moved from title 77 to title 78B. *See* Utah Code Ann. § 78B-7-701 (LexisNexis Supp. 2020).

4. There has been much made on appeal about Rashid being unlicensed during the events in question. But this point is ultimately irrelevant to our decision because, as discussed below, *see infra* ¶¶ 20–22, the lack of a private investigator

(continued…)

simply does not provide such an affirmative defense to the *crime* of stalking. Thus, an ordinary person of reasonable intelligence would not interpret the complete absence of such a defense in the criminal code to mean that the defense could be raised in a criminal context. Rashid even appears to have acknowledged this point when he stated at the hearing on his motion for a new trial that "it is a "no-brainer"—"[t]here is no defense for a private investigator as to stalking," just as "[t]here is no defense as to anybody as to stalking."

¶21 Second, the criminal stalking statute is found in title 76, while the civil stalking injunction provision was, at the time, contained in title 77. *See supra* note 3. Thus, the location of the private investigator defense in the civil stalking injunction provision of title 77 underscores its inapplicability to a criminal charge of stalking as established in title 76.

¶22 Finally, for a civil stalking injunction to be entered, the petitioner must only "show by a preponderance of the evidence that stalking of the petitioner by the respondent has occurred." Utah Code Ann. § 77-3a-101(6)(a) (LexisNexis 2018). This is a lower burden of proof than the beyond-a-reasonable-doubt standard that the prosecution must meet to obtain a criminal stalking conviction under Utah Code section 76-5-106.5. Thus, our Legislature has allowed private investigators an escape hatch only in civil stalking injunction cases, and by not including such a defense in section 76-5-106.5, it is clear that our Legislature was not inclined to offer that defense to private investigators when the government could prove *beyond a reasonable doubt* that an investigator's actions constituted stalking. Basically, these two sections concern stalking in

---

(…continued)
defense to a *criminal* stalking charge subjects even licensed private investigators to criminal liability.

different contexts, dealt with in different statutes, and no person of ordinary intelligence would conflate the two and believe that inclusion of a private investigator defense in only one context actually means that it is available in both contexts.

¶23    Essentially, Rashid's argument on this point is not that Utah Code section 76-5-106.5 is vague, but rather that our Legislature has made a poor policy choice in not allowing an affirmative defense to criminal stalking for private investigators acting within the scope of their employment.[5] But such policy judgments are for the Legislature, not the judiciary, to make. *See State v. Jeffries*, 2009 UT 57, ¶ 13 n.3, 217 P.3d 265 ("The job of the legislature is to define crimes, prescribe penalties, and establish guidelines for prosecutors, judges, and juries for enforcing the law.").

¶24    Ultimately, the language of section 76-5-106.5 is not vague as applied to Rashid because it "specifically defines the types of [prohibited activity] and describes the act[s] required to violate the statute" and their corresponding consequences. *See State v. Pence*, 2018 UT App 198, ¶ 22, 437 P.3d 475. Accordingly, Rashid "cannot persuasively argue that he would not have known that

_____

5. Rashid is correct that the statutes of many states provide otherwise. *See, e.g.,* Ark. Code Ann. § 5-71-229(d) (2017) ("It is an affirmative defense to [stalking] if the actor is a . . . licensed private investigator . . . acting within the reasonable scope of his or her duty."); Del. Code Ann. tit. 11, § 1312(j) (2008) (stating that the stalking statute "shall not apply to conduct which occurs in furtherance of legitimate activities of . . . private investigators"); N.D. Cent. Code § 12.1-17-07.1(4) (2019) ("[I]t is a defense [to stalking] that a private investigator . . . was acting within the scope of employment."). But the laws in other states are irrelevant in determining whether the Utah Code is vague in providing such a defense, which it is not.

[his actions in twice observing and surveilling Victim] would constitute acts sufficient to violate the [statute]."[6] *See id.*

B.      Arbitrary and Discriminatory Enforcement

¶25    Even if a statute "is sufficiently definite to have notified [a defendant] that his conduct was prohibited," it may nonetheless be deemed unconstitutionally vague if it is not "sufficiently definite so as to discourage arbitrary and discriminatory enforcement." *State v. Green*, 2004 UT 76, ¶ 50, 99 P.3d 820 (quoting *Kolender v. Lawson*, 461 U.S. 352, 358, 360 (1983)). To pass muster under this standard, "a statute must 'establish minimal guidelines to govern law enforcement' such that it avoids entrusting 'lawmaking to the moment-to-moment judgment'" of individual officers in determining the statute's applicability. *Id.* But a statute does not run afoul of this prohibition simply by leaving in place the traditional discretion granted to prosecutors to determine whom to charge in a particular circumstance. *See State v. Carter*, 578 P.2d 1275, 1277 (Utah 1978) ("[D]iscretion rests in the prosecutor in every case as to whether or not to charge a violation of a criminal statute. Some selectivity is always permitted, so long as the election is not discriminatorily based on classifications of race, national origin, sex, religion, etc."). *See also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (holding that "so long as the prosecutor has

---

6. Indeed, Rashid even admitted at trial that "if [his] mother called [him] and said this happened to her, [he] would . . . have been concerned for her." While this statement does not categorically prove Rashid's state of mind, it was clearly probative of whether he knew or should have known the effect of his actions on Victim and was evidence that the jurors could rely on, in addition to their own experience, in determining whether a reasonable person would have feared for her safety or suffered emotional distress in these circumstances.

probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion," and "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification") (quotation simplified); *State v. Mohi*, 901 P.2d 991, 1002–03 (Utah 1995) (explaining that "traditional prosecutor[ial] discretion" encompasses "[s]electing a charge to fit the circumstances of a defendant and his or her alleged acts" and is not a constitutional violation); *State v. Garcia*, 504 P.2d 1015, 1015–16 (Utah 1972) (holding that it is not an "error for [a] prosecutor to treat . . . defendants in a different manner" by "proceed[ing] against one defendant [and] charging him with a felony and [reducing] the charge against the codefendant to a misdemeanor").

¶26    Rashid asserts that section 76-5-106.5 encourages arbitrary and discriminatory enforcement in two ways.[7] First, he claims

---

7. Here, Rashid's argument on appeal takes an unexpected turn. In asserting that the statute encourages arbitrary and discriminatory enforcement under the vagueness doctrine, Rashid cites *State v. Mohi*, 901 P.2d 991 (Utah 1995). He claims that application of "the analysis set forth in *Mohi* to the stalking statute shows that the stalking statute violates the uniform operation of laws provision of the Utah Constitution." But the analysis for a uniform operation of laws challenge is different from a vagueness challenge. *Compare State v. Robinson*, 2011 UT 30, ¶ 17, 254 P.3d 183 ("To determine whether a statute violates the uniform operation of laws, we apply a three-step analysis: (1) whether the statute creates any classifications; (2) whether the classifications impose any disparate treatment on persons similarly situated; and (3) if there is disparate treatment, whether

(continued…)

that the statute is unconstitutional "[b]ecause the statute permits police, prosecutors, and judges to have arbitrary discretion in determining who can and cannot be charged." Rashid points to the prosecutor's decision in this case not to charge Manager as evidence of arbitrary enforcement. This argument is unavailing because it implicates only traditional prosecutorial discretion.

¶27 Here, the statute does not encourage arbitrary enforcement simply because it allows prosecutors the "traditional prosecutorial discretion" afforded them under nearly all criminal statutes in the Utah Code "in determining what charges to pursue" and against whom. *State v. Angilau*, 2011 UT 3, ¶ 28, 245 P.3d 745 (quotation simplified). *See Bordenkircher*, 434 U.S. at 364. And the prosecutor's decision to charge Rashid and not Manager was a classic use of that discretion and does not amount to arbitrary enforcement, because it was apparently not "based on classifications of race, national origin, sex, religion, etc."[8] *See Carter*, 578 P.2d at 1277.

---

(…continued)
the legislature had any reasonable objective that warrants the disparity.") (quotation simplified), *with State v. Garcia*, 2017 UT 53, ¶ 56, 424 P.3d 171 ("[A] criminal statute is not unconstitutionally vague if it defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.") (quotation simplified). Because Rashid has not undertaken a uniform operation of laws analysis, we decline to address this argument further.

8. Rashid has not asserted that the decision of the prosecutor to charge him and not Manager was based on his race, religion, national origin, sex, or any other impermissible category, and thus we assume, for purposes of our analysis, that the

(continued…)

*See also Mohi*, 901 P.2d at 1008 (Russon, J., concurring in part) (stating that a "prosecutor has the discretion in regard to an alleged criminal act to file felony charges, or misdemeanor charges, or no charges whatsoever" and "can even do so in relation to a single criminal act involving more than one person" such that it would not be an act of "'unconstitutional discretion' if the prosecutor charged A with a felony, B with a misdemeanor, and C with nothing at all"). Accordingly, the complained-of language does not encourage arbitrary enforcement. While the language does allow prosecutorial discretion in deciding whom to charge criminally for conduct that clearly violates the statute, it "establish[es] minimal guidelines to govern law enforcement," *see Kolender*, 461 U.S. at 358 (quotation simplified), and does not leave law enforcement officials who encounter Rashid's circumstances free "to pursue their own personal predilections in determining the *applicability* of [the] statute," *see Green*, 2004 UT 76, ¶ 52 (emphasis added).

¶28    Second, Rashid asserts that "there could be a valid argument that a private investigator has a defense by citing the defense against a civil stalking injunction" and "the statute would allow a judge discretion to determine if there is a valid defense without enough guidance in the criminal stalking statute." Rashid is mistaken. As we have already determined above, *see supra* ¶¶ 20–22, there is no "valid argument," as Rashid asserts, that a defense exists for private investigators charged with criminal stalking. As such, the statute would not allow law enforcement officers, prosecutors, or judges to grant some private investigators the benefit of such a defense while not allowing the same benefit to others.

---

(…continued)
prosecutor's decision was based on permissible prosecutorial discretion.

¶29 For all these reasons, we reject Rashid's argument that Utah Code section 76-5-106.5 is unconstitutionally vague as applied to him.

## II. Expert Witness Testimony

¶30 Rashid next asserts that the district court erred in excluding Expert's testimony under rules 402 and 403 of the Utah Rules of Evidence. Evidence is admissible only if it is relevant, *see* Utah R. Evid. 402; in other words, if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action," *id.* R. 401. But "the court may [still] exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* R. 403. As noted above, we review a court's decision to admit or exclude expert testimony for an abuse of discretion, and "a court does not abuse its discretion in admitting or excluding expert testimony unless the decision exceeds the limits of reasonability." *Harrison v. SPAH Family Ltd.*, 2020 UT 22, ¶ 22, 466 P.3d 107 (quotation simplified). Finally, even if the court erred in excluding expert testimony, we will not reverse if that "error . . . does not affect the substantial rights of [the] party." Utah R. Crim. P. 30(a). "Our Supreme Court has held that this ordinarily requires a defendant to show that, absent the [error], there is 'a reasonable likelihood of a more favorable result for the defendant.'" *State v. Ahmed*, 2019 UT App 65, ¶ 17, 441 P.3d 777 (quoting *State v. Knight*, 734 P.2d 913, 919 (Utah 1987)).

¶31 Rashid asserts that Expert's testimony was relevant to his defense because it showed "that he did not possess the required intent of 'knows or should know' that his actions would 'cause a reasonable person' to fear for their safety [or] to 'suffer other

emotional distress.'" Specifically, Rashid contends that "Expert would have testified about the correct procedures and practices private investigators use and correct training for apprentices and interns in the private investigator field" and that, had Rashid been properly trained, "the actions that led to the stalking charges would not have occurred."

¶32 While we are not unsympathetic to Rashid's plight in this general regard, receiving poor training and hypothetically discussing what he would have done if he had been properly trained does not have any tendency to make the fact that he committed stalking in this case "more or less probable." *See* Utah R. Evid. 401. The proposed testimony has no rational connection to whether Rashid knew or should have known *at the moment* he surveilled Victim that his actions would cause a reasonable person to fear for their safety or to suffer other emotional distress. When Rashid placed the GPS device on Victim's car, waited for her in the parking lot, followed her for a significant distance, and then returned a few days later, he should have known his actions might cause a reasonable person in those circumstances to fear for her safety. Rashid basically acknowledged as much when he stated that he would have been concerned if the same things had happened to his own mother, presumably because he knew how distressing it would be for her. And any testimony about training, which is not relevant to an element of criminal stalking, would be irrelevant to what he knew or should have known, as a rational person, about the effect his actions would likely have on a reasonable person under the circumstances.

¶33 Additionally, because there is no private investigator defense to the crime of stalking available even to highly trained private investigators, the level and scope of their training is irrelevant. If a properly trained investigator forgot or neglected his or her training and undertook the same actions Rashid did, that investigator would also be guilty of criminal stalking. Thus,

the district court did not abuse its discretion in excluding Expert's testimony.

¶34 Finally, we agree with the district court that given Rashid's own testimony at trial regarding his poor training, he cannot show that he was prejudiced, i.e., that there is "a reasonable likelihood of a more favorable result" at trial had Expert testified about the same thing. *See Knight*, 734 P.2d at 919 (quotation simplified). This is so because, as the district court rightly acknowledged, it "would have been, at best, cumulative of [Rashid's] own testimony." Additionally, any reasonable juror hearing about Rashid's questionable exploits in this case could readily determine, without Expert's testimony, that he had not yet been properly trained to be a private investigator. Therefore, it is highly unlikely that had Expert testified at trial, the jury would have acquitted Rashid.

¶35 For these reasons, we cannot say that the district court's decision to exclude Expert's proposed testimony "exceed[ed] the limits of reasonability." *See Harrison v. SPAH Family, Ltd.*, 2020 UT 22, ¶ 22, 466 P.3d 107 (quotation simplified). On the contrary, it seems to have been a very sensible decision.

CONCLUSION

¶36 The district court did not err in ruling that Utah Code section 76-5-106.5 was not unconstitutionally vague as applied to Rashid, and it did not abuse its discretion in excluding Expert's proposed testimony under the Utah Rules of Evidence. Rashid's conviction is affirmed.

---