*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 22**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

CHARLIE W. HARRISON and TRENA HARRISON,
*Appellants,*

*v.*

SPAH FAMILY LTD., STAN E. HOLLAND, and PAGE HOLLAND,
*Appellees.*

No. 20180537
Heard October 4, 2019
Filed May 8, 2020

On Direct Appeal

Seventh District, Moab
The Honorable Lyle R. Anderson
No. 160700035

Attorneys:

Vincent C. Rampton, Jessica P. Wilde, Salt Lake City,
for appellants

Troy L. Booher, Freyja R. Johnson, Kristine M. Rogers, Salt Lake
City, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1  This is a prescriptive easement case. The district court
determined, on summary judgment, that Stan and Page Holland
had established a prescriptive easement across the property of
their neighbors, Charlie and Trena Harrison. The case then went
to trial for a determination of the scope of that easement. The jury
returned a verdict, and the court entered final judgment. The
Harrisons now appeal, raising five issues regarding either the

district court's summary judgment decision or decisions the court made related to the trial.

¶2 First, they argue the district court erred in determining, on summary judgment, that the "continuous" element had been indisputably established for the prescriptive period. In their view, evidence that they revoked their "acquiescence" of the use interrupted the Hollands' continuous use of the easement. We reject this argument because "acquiescence" is not required to establish a prescriptive use.

¶3 Second, the Harrisons argue the district court erred on summary judgment because any use of the road by the Hollands was done with the permission of the original owner of the Harrisons' lot. We reject this argument because the record evidence does not support it.

¶4 Third, the Harrisons argue that one of the jury instructions was erroneous because it failed to instruct the jury that the scope of the easement was limited to its historical use. We agree and remand for a new trial with a correct jury instruction.

¶5 Fourth and fifth, the Harrisons argue the district court erred in allowing the Hollands' expert to testify and in excluding their rebuttal expert from testifying. Because the district court did not abuse its discretion in regard to either expert witness determination, we affirm.

## Background

¶6 To access their cabin property located in the Willow Basin subdivision, Stan and Page Holland claim a prescriptive easement across land owned by Charlie and Trena Harrison. The relevant ownership history of the Holland and Harrison properties begins in 1994. In that year, Janice Hawley (now Janice Gustafson) divided nearly one hundred acres of her land into the eight lots constituting what is now referred to as the Willow Basin subdivision.

¶7 Following the creation of the Willow Basin subdivision, Ms. Hawley transferred title to what would later become the Holland lot to Manuel Torres. Without Ms. Hawley's knowledge or authorization, Mr. Torres cut a road across what would later become the Harrison property. Ms. Hawley believed the road was created "as a means of permitting [Mr. Torres] to take prospective purchasers to the property for marketing purposes." In her declaration prepared for litigation in this case, Ms. Hawley stated

that the road was used "thereafter for [marketing purposes] pursuant to permission from [her]."

¶8    On August 9, 1996, Mr. Torres sold the Holland property to the Hollands.[1] That same day, the Hollands used the road across what is now the Harrison property to access their new lot. The Hollands did not receive permission from Ms. Hawley to use the road. The Hollands have regularly used the road to access their property ever since.

¶9    In 2008, Ms. Hawley sold the Harrison property to the Harrisons. Thereafter, Mr. Harrison altered the road. The Hollands testified that Mr. Harrison widened the turning point going toward his cabin, but that he had done little to the rest of the road. In contrast, Mr. Harrison estimated that the road was nine to twelve feet wide when he purchased the parcel, and he testified that the width of the road is now "upwards of 30 feet wide." The Hollands continued using the road across the Harrison property after the Harrisons acquired title.

¶10  In June 2016, Mr. Holland and Mr. Harrison had a verbal disagreement concerning the road. At that time, or some time before, Mr. Harrison attempted to forbid the Hollands from using the road.

¶11  On September 13, 2016, Mr. Harrison parked a bulldozer on the road, blocking the Hollands' access. In response, the Hollands called the police. Ms. Holland filed a statement with the police, explaining that Mr. Harrison had blocked the road with a bulldozer. She also referenced the June 2016 verbal dispute between Mr. Holland and Mr. Harrison, explaining that the police had also been called on that occasion and that Mr. Harrison had told Mr. Holland that Mr. Holland could not use the road.

¶12 Shortly after the bulldozer incident, the Harrisons filed this lawsuit, suing the Hollands for trespass based on the Hollands' use of the road crossing the Harrisons' property. The Hollands counterclaimed, seeking to quiet title to a prescriptive easement for access to their property over the Harrisons' property. In April 2017, the Hollands filed for partial summary judgment, arguing that all the elements for a prescriptive

---

[1] The Hollands subsequently transferred title to the Holland property to SPAH Family Ltd., their limited partnership.

easement had been satisfied. In opposition, the Harrisons argued that a prescriptive easement did not form because they had not acquiesced to the Hollands' use during the entire twenty-year prescriptive period. They also argued that the use was permissive. After a hearing, the district court found, as a matter of law, that the Hollands had established a prescriptive easement.

¶13 In October 2017, the Harrisons filed a motion to reconsider, raising arguments based on statements Ms. Holland made in her September 2016 police report. This was the first time the police report had been presented to the district court. The Harrisons argued that the district court should consider the police report because it constituted newly discovered evidence. They argued that this evidence showed that, in June 2016, (1) Mr. Harrison had informed Mr. Holland that he did not acquiesce in the Hollands' use of the easement and (2) the police had been called and litigation had been threatened regarding the Hollands' use of the easement.

¶14 The Harrisons relied on this evidence to argue that the prescriptive period had been interrupted in June 2016, roughly two months before the completion of the twenty-year prescriptive period. The Hollands objected to the motion to reconsider, arguing that the police report did not constitute new evidence because it had existed for nearly one year before the parties filed their memoranda related to summary judgment. The district court denied the motion to reconsider without stating its reasoning.

¶15 The case proceeded to trial to determine the scope of the Hollands' prescriptive easement. Before trial, the Harrisons sought to exclude testimony from Lucas Blake, the Hollands' retained expert witness. Mr. Blake intended to testify about a survey of the road he performed in 2016. The Harrisons argued that Mr. Blake's testimony should be excluded because the scope of the road in 2016 was irrelevant to determining the scope of the easement. The court denied the motion because it found that evidence of the then physical dimensions of the road would prove helpful in determining the scope of the prescriptive easement.

¶16 The Harrisons also objected to the wording of the jury instruction regarding the prescriptive easement. As presented, the jury instruction stated that the jury needed to decide the "width of the easement . . . necessary for [the Hollands] to access their property." Although the instruction also asked the jury to take into account "the historic[al] use and shape of the roadway during its 20 years of use," the Harrisons asked the court to include a line

instructing the jury that the "extent of a prescriptive easement is measured and limited by its historic[al] use during the prescriptive period." But the court declined, stating that it believed the instruction sufficient as written.

¶17 At trial, Mr. Blake testified, and the Harrisons sought to introduce rebuttal testimony from Brad Bunker, their own expert witness. Mr. Bunker intended to testify that "Mr. Blake's survey was not based on historic[al] use of the easement claimed by [the Hollands], but was formulated by (1) measuring the edges of the road across the [Harrisons'] property as it existed in October 2016, and (2) establishing a center line of that road by 'eyeballing a midpoint line.'" The court ruled that Mr. Bunker would not be allowed to testify, because the testimony usurped the court's responsibility in instructing the jury.

¶18 The jury returned a finding regarding the scope of the prescriptive easement that was based on Mr. Blake's 2016 survey. In the special verdict form, the jury stated that it returned this finding because it was "consistent with other easements in [the] subdivision." The court entered final judgment on June 5, 2018. The Harrisons timely appealed.

¶19 In their opening brief on appeal, the Harrisons challenge the district court's decision on summary judgment based on evidence contained in the September 2016 police report. But they do not challenge the district court's decision on their motion to reconsider, the motion in which they first introduced the police report as evidence. The Harrisons also challenge the district court's summary judgment decision regarding permissive use, the court's decision regarding the expert testimony of Mr. Blake and Mr. Bunker, and the jury instruction regarding prescriptive easements. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

**Standards of Review**

¶20 The Harrisons ask us to resolve five issues. First, we must determine whether the district court erred on summary judgment in ruling that the Hollands had established twenty years of uninterrupted prescriptive use. Second, we must determine whether the court erred on summary judgment in ruling that the Hollands had established that their use had been adverse, rather

than permissive. We review summary judgment rulings for correctness, viewing the facts and inferences in the light most favorable to the nonmoving party.[2]

¶21 Third, we must determine whether the court erred in instructing the jury regarding the scope of the Hollands' prescriptive easement. We review challenges to jury instructions for correctness.[3]

¶22 Fourth, we must determine whether the court erred in admitting evidence from the Hollands' retained expert. And fifth, we must determine whether the court erred in excluding evidence from the Harrisons' rebuttal expert. We review a court's decision regarding the admissibility of expert testimony for an abuse of discretion.[4] A court does not abuse its discretion in admitting or excluding expert testimony "unless the decision exceeds the limits of reasonability."[5]

**Analysis**

¶23 The Harrisons raise five issues on appeal. First, they argue the trial court erred in determining, as part of its decision on summary judgment, that the "continuous" element had indisputably been established for the prescriptive period. We reject this argument because it is based on a misunderstanding of the legal requirements for establishing a prescriptive use.

¶24 Second, the Harrisons argue the district court erred in determining, on summary judgment, that the prescriptive use had been adverse because the original owner of the Harrisons' lot had given the Hollands' predecessor permission to use the road. We reject this argument because it is not supported by the record.

¶25 Third, the Harrisons argue that one of the jury instructions was erroneous because it failed to instruct the jury that the scope of the easement was limited to its historical use. We agree. Accordingly we remand for a new trial with a correct jury instruction.

---

[2] *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

[3] *Green v. Louder*, 2001 UT 62, ¶ 14, 29 P.3d 638.

[4] *State v. Holm*, 2006 UT 31, ¶ 10, 137 P.3d 726.

[5] *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993).

¶26 Fourth and fifth, the Harrisons argue the district court erred in allowing the Hollands' expert to testify and in excluding their rebuttal expert from testifying. Because the district court did not abuse its discretion in regard to either expert witness, we affirm.

I. We Affirm the District Court's Determination That the Hollands Used the Road Continuously for Twenty Years

¶27 The district court correctly determined that the Hollands' prescriptive use was continuous for twenty years. The Harrisons argue that to be "continuous" a prescriptive use "must continue uninterrupted, with the acquiescence of the [landowner], for the entire prescriptive period." Because there is clear evidence that the Harrisons did not "acquiesce" in the Hollands' use of the easement for the full twenty-year period, they argue that the district court erred in determining that the "continuous" element had indisputably been established for the prescriptive period. But the Harrisons' argument on this point fails because an owner's "acquiescence" is not needed to establish a prescriptive use.[6]

---

[6] On appeal, the Harrisons point to two pieces of evidence that, in their view, demonstrate that they did not acquiesce in the prescriptive use for the full twenty-year period. First, they point to Charlie Harrison's sworn declaration, in which he testified that he had revoked his acquiescence. Second, they point to a September 2016 police report, which contains evidence regarding multiple disputes between the families. Although "acquiescence" is not needed to establish a prescriptive easement, we note that it would be improper to consider this evidence on appeal. This is because the Harrisons did not present the police report evidence to the district court as part of their opposition to summary judgment. Instead, they presented it for the first time approximately one year later as part of their motion to have the court reconsider its summary judgment decision—a motion the district court denied. Because the Harrisons have not challenged the district court's denial of their motion to reconsider in their principal brief, we cannot consider the police report evidence on appeal. This is because, by considering that evidence, we would implicitly overrule the district court's unchallenged denial of the motion to reconsider.

¶28 In Utah, a prescriptive easement is established where the "use of another's land was open, continuous, and adverse under a claim of right for a period of twenty years."[7] The Harrisons argue that the "continuous" element was not satisfied for the full twenty-year period because, a few months before the twenty-year period was complete, Mr. Harrison informed the Hollands that he did not acquiesce in the Hollands' continued use. But a landowner's lack of acquiescence in a prescriptive use does not interrupt the running of a prescriptive period.

¶29 To satisfy the "continuous" element, prescriptive users must show only that they used the easement "as often as required by the nature of the use and the needs of the [user]" without interruption during the twenty-year period.[8] According to the Restatement (Third) of Property, there "are two aspects to the requirement that a prescriptive use be continued for the prescriptive period: one mental, the other physical."[9] The mental aspect "requires that the prescriptive user remain in an adverse posture to the holder of the servient estate throughout the prescriptive period."[10] So where "the user submits to the title of the possessor, or abandons the adverse claim under which the use is made, there is a break in the continuity of adverse use."[11] The physical aspect of continuous use, on the other hand, requires that the prescriptive user actually and continually use the easement throughout the prescriptive period.[12]

¶30 Under this formulation of the "continuous" element of prescriptive easements, a prescriptive period is interrupted where the prescriptive user halts his or her actual use of the easement or where the prescriptive user alters his or her mental state (so that

---

[7] *Judd v. Bowen*, 2018 UT 47, ¶ 12, 428 P.3d 1032 (internal quotation marks omitted) (citation omitted).

[8] *Crane v. Crane*, 683 P.2d 1062, 1064 (Utah 1984) (internal quotation marks omitted).

[9] RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.17 cmt. i (AM. LAW INST. 2000).

[10] *Id.*

[11] *Id.*

[12] *Id.*

the prescriptive user begins using the easement under the owner rather than against the owner). An alteration in a prescriptive user's mental state most often occurs where the prescriptive user accepts a landowner's permission to continue using the easement.[13]

¶31 To be clear, because it is the mental state of the *prescriptive user* that is the focus of this analysis, a landowner's "grant of permission to the prescriptive user" will not "work an interruption unless the user submits to the title of the landowner by accepting the license offered."[14] So it is the prescriptive user's submission to the landowner that interrupts the prescriptive period—not the owner's grant of permission.[15]

---

[13] *Id.*

[14] *Id.* cmt. j.

[15] *See also id.* § 2.16 cmt. f ("A use that begins as adverse can be converted to a permissive or subordinate use if the user agrees to accept a license from the landowner, or if the user acts in such a way that the ordinary landowner would believe that the user has accepted the grant of a license to use the land."). In property law, the term "license" typically refers to the revocable permission, given by a landowner to a user (or licensee), for a specific use of the landowner's land. *See License*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A permission, usu. revocable, to commit some act that would otherwise be unlawful; esp., an agreement (not amounting to a lease or profit à prendre) that it is lawful for the licensee to enter the licensor's land to do some act that would otherwise be illegal, such as hunting game."). A license can be created orally or in writing. *See King Bros., Inc. v. Utah Dry Kiln Co.*, 440 P.2d 17, 21 (Utah 1968) ("A licensee differs from a lessee in that the latter has a possessory interest. There is no right of possession in the licensee. There is a plain difference between a license and a lease. A lease differs from a license in that a lease of land passes an interest in the land, requires a writing to comply with the Statute of Frauds, although not always a seal, and transfers possession, while a license merely excuses acts done by one on land in possession of another that without the license would be a trespass, conveys[] no interest in the land, and may be contracted for or given orally. A tenancy implies some interest in the land leased,

(Continued)

¶32 We note that whether a prescriptive user has submitted to the landowner's ownership is a factual determination made by the fact finder after weighing all relevant evidence. So, for example, where there is contradictory testimony regarding whether a prescriptive user accepted a landowner's permission, the fact finder should weigh the credibility of the witnesses in determining whether an interruption in the prescriptive user's adverse mental state occurred. And, as another example, where it is unclear whether a prescriptive user accepted the landowner's permission, but the user acted in a way that would lead a reasonable person to believe that the user had so accepted, this fact should lead the fact finder to conclude that a mental interruption of the prescriptive period occurred.[16]

¶33 In contrast to a mental interruption of a prescriptive period, a prescriptive period may be physically interrupted only "if it brings about a cessation of use" that is "long enough to indicate" that the prescriptive user has abandoned the use.[17] In

---

while a license gives only a temporary privilege in the use of the property, usually revocable at the pleasure of the licensor.").

[16] Additionally, we note that where the facts regarding a prescriptive user's mental state are truly ambiguous, the question will likely be resolved based on the presumption that arises from the nature of the initial use. Under our case law, where a use of an easement is initially permissive, there is a presumption that it remains permissive—a presumption the user must rebut. *Richins v. Struhs*, 412 P.2d 314, 316 (Utah 1966) (explaining that where "the use was initially permissive, then the burden of going forward with evidence and of ultimate persuasion shifts back to the claimant to show that the use became adverse and continued for the prescriptive period"). But where the use is not initially permissive, the presumption goes the other way. *Valcarce v. Fitzgerald*, 961 P.2d 305, 311–12 (Utah 1998) ("[O]nce a claimant has shown an open and continuous use of the land under claim of right for the twenty-year prescriptive period, the use will be presumed to have been adverse. To prevent the prescriptive easement from arising, the owner of the servient estate then has the burden of establishing that the use was initially permissive." (citation omitted)).

[17] RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.17 cmt. j (AM. LAW INST. 2000).

other words, to be successful, the owner's attempt to prevent the prescriptive use must cause the prescriptive user to actually abandon the use.

¶34 For this reason, any action taken by a landowner to stop a prescriptive use is effective only where it actually stops the use. In fact, where a landowner attempts, but fails, to interrupt a prescriptive use, the unsuccessful attempt serves only to reinforce "the argument that the use is adverse," and so "does not work an interruption."[18] Accordingly, it "is not sufficient merely to attempt an interruption or to render the use less convenient. The obstruction must in fact interfere with the claimant's usage. Thus, the erection of gates during the prescriptive period is immaterial where they do not prevent a claimant from using a road."[19]

¶35 So, under the Restatement's approach to the continuous use element, evidence that a landowner does not acquiesce in a prescriptive user's use or that the landowner unsuccessfully attempted to stop the prescriptive use would not interrupt the running of the prescriptive period. Our case law is consistent with this approach.

¶36 Under our case law, a prescriptive use is "continuous" where the prescriptive user used the easement "whenever they desired and as a right."[20] And we have explained that this use must have been continually "against" the rights of the landowner, rather than "under" the landowner, for the entire prescriptive period.[21] So, like the Restatement, our case law has identified a mental aspect of prescriptive use—an "adverse" mental state or a mental state "against" the owner.

¶37 And, also like the Restatement, our case law recognizes that it is the mental state of the prescriptive user, rather than of the landowner, that matters in determining whether a use was continuous for the entire prescriptive period. For example, in *Lunt*

---

[18] *Id.*

[19] JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS & LICENSES IN LAND § 5:16 (2019) (footnotes omitted).

[20] *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977).

[21] *Zollinger v. Frank*, 175 P.2d 714, 715 (Utah 1946).

*v. Kitchens*,[22] we held that a prescriptive easement had not been formed because the landowner had "produced evidence that [the prescriptive user] considered the use permissive and not adverse." So in *Lunt* it was the prescriptive user's belief that he was using the road with the landowner's permission that prevented the prescriptive easement from being formed.

¶38 And in *Crane v. Crane*,[23] we clarified that a prescriptive user can maintain an adverse mental state even where an owner offers permission to continue using the easement. In that case we held that a prescriptive easement had been established, even though the landowner had provided the prescriptive users with a key to enter through a gate. The landowner argued that his act of giving the prescriptive users a key rendered the prescriptive use permissive, rather than adverse. But we disagreed.[24]

¶39 Although we acknowledged that the landowner had offered the prescriptive users a key, we held that the "use was adverse to rather than by permission of" the landowner.[25] We did so "in view of the [prescriptive users'] insistence . . . that they had a right to use the trail and would force their way through if necessary."[26] In other words, we held that the landowner's offer to permit the users to cross his land did not interrupt the prescriptive use, because it was clear that the prescriptive users would have continued using the easement even without that permission. So our decision in *Crane* demonstrates that a landowner cannot interrupt the prescriptive use of an easement by offering permission to continue using the easement. Instead, the prescriptive use is interrupted only where the prescriptive user submits to the ownership rights of the landowner by accepting the landowner's permission.

¶40 Additionally, our focus on the mental state of the prescriptive user means that, where the user has consistently maintained an adverse mental state, the landowner's acquiescence

---

[22] 260 P.2d 535, 538 (Utah 1953).

[23] 683 P.2d at 1065.

[24] *Id.*

[25] *Id.*

[26] *Id.*

or lack of acquiescence is insufficient to interrupt the prescriptive period. *Crane* also illustrates this principle. Although the landowner in *Crane* attempted to grant the prescriptive users permission at one point during the twenty-year prescriptive period, at other times he attempted to stop the prescriptive use by erecting a gate and refusing to provide the key.[27] But even though these attempts provided clear evidence that the landowner did not acquiesce in the prescriptive users' use of the easement, this lack of acquiescence did not interrupt the running of the prescriptive period.[28] In other words, because it is the mental state of the prescriptive user, and not the mental state of the landowner, that controls whether a prescriptive use has been continuous, evidence that the landowner clearly did not "acquiesce" was insufficient to rebut evidence that the prescriptive user had continuously maintained an adverse mental state throughout the prescriptive period.

¶41 Accordingly, under our case law it is the mental state of the prescriptive user, rather than the mental state of the landowner, that determines whether a prescriptive period has been interrupted. So our case law is consistent with the Restatement principle that a landowner's "grant of permission to the prescriptive user" will not "work an interruption unless the user submits to the title of the landowner by accepting the license offered."[29]

¶42 Our case law is also consistent with the Restatement's requirement of continuous physical use by the prescriptive user. As we already explained, under the Restatement's approach, where a landowner attempts, but fails, to interrupt a prescriptive use, the unsuccessful attempt serves only to reinforce "the argument that the use is adverse," and so "does not work an interruption."[30] In *Crane*, the prescriptive use was not interrupted

---

[27] *Id.*

[28] *Id.*

[29] RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.17 cmt. j (AM. LAW INST. 2000).

[30] *Id.*; *see also* JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 5:16 (2019) (explaining that it "is not sufficient merely to attempt an interruption or to render

(Continued)

when the landowner erected physical barriers, because each time the landowner erected those barriers the prescriptive users "cut the fence and the gate and went through anyway."[31] Thus our decision in *Crane* demonstrates that an attempt by the landowner to stop a prescriptive use interrupts the prescriptive period only where it "brings about a cessation of use" that is "long enough to indicate" that the prescriptive user has abandoned the use.[32]

¶43 As illustrated by our case law, our approach to the "continuous use" element of prescriptive easements is consistent with the Restatement's approach. And under that approach, there "are two aspects to the requirement that a prescriptive use be continued for the prescriptive period: one mental, the other physical."[33] This means that a landowner may interrupt a prescriptive period only by altering the mental state of the prescriptive user (so that the prescriptive user begins using the easement *under* the owner rather than *against* the owner) or by successfully halting the actual use of the easement. Under this approach, the Harrisons' arguments regarding the interruption of the Hollands' prescriptive use fail.

¶44 First, the Harrisons argue that the Hollands' use of the road was interrupted because Mr. Harrison clearly indicated that he did not acquiesce in the use of the road. But, under the Restatement's approach, whether the Harrisons acquiesced in the Hollands' use is relevant only to the extent it provides evidence of the Hollands' mental state. In other words, in analyzing whether the Hollands' prescriptive use was continuous for twenty years, we need determine only whether the required mental or physical aspects of the Hollands' use were uninterrupted. And with this inquiry in mind, it is clear that Mr. Harrison's attempt to prohibit the Hollands from using the road did not interrupt the prescriptive period.

---

the use less convenient. The obstruction must in fact interfere with the claimant's usage. Thus, the erection of gates during the prescriptive period is immaterial where they do not prevent a claimant from using a road" (footnotes omitted)).

[31] 683 P.2d at 1065.

[32] RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.17 cmt. j (AM. LAW INST. 2000).

[33] *Id.*

¶45 After Mr. Harrison told the Hollands they could not use the road, the Hollands did not indicate that they submitted to the Harrisons' ownership of the road in any way. The Hollands did not abandon their claim to the road nor did they cease to use it. So Mr. Harrison's attempt to prohibit the Hollands from using the road did not alter the Hollands' mental state regarding their right to use the easement. That is, it did not cause them to believe that they could only use the road with the Harrisons' permission. And it did not alter the Hollands' physical use of the road.

¶46 Second, the Harrisons cite the Restatement to argue that a call to the police in June—after Mr. Harrison's argument with Mr. Holland—constituted sufficient "legal proceedings" to interrupt the prescriptive period. But, as we have discussed, under the Restatement's approach, a use may be interrupted only where a landowner successfully alters the mental state of the prescriptive user so that it is no longer adverse (or "against" the owner), or where the landowner actually stops the use. So even though a landowner may certainly use legal proceedings to stop a prescriptive user from using the easement, the commencement of legal proceedings, on its own, does not interrupt the prescriptive period unless it causes the prescriptive user to cease using the easement adversely or it leads to a successful outcome on the landowner's behalf.

¶47 The Bruce and Ely treatise, The Law on Easements & Licenses in Land, states this principle clearly. Bruce and Ely explain that, in "addition to actually obstructing adverse usage . . . , a landowner may interrupt the use by instituting successful legal proceedings."[34] But they explain that the "filing of an action by a landowner against whom the statute of limitations is running will interrupt the prescriptive period [only] if the lawsuit results in a judgment that the use was improper."[35] So where a landowner prevails against a prescriptive user, the "judgment relates back to the start of the proceedings" and the use is deemed to have been interrupted when the lawsuit was

---

[34] JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 5:16 (2019).

[35] Id.

filed.[36] Thus a successful judgment against a prescriptive user is deemed to have interrupted the prescriptive user's use as of the date the lawsuit was filed. But an unsuccessful lawsuit does not interrupt the use at all.

¶48 Under this rule, the phone calls to the police were insufficient to interrupt the running of the prescriptive period. Accordingly, the Harrisons' other argument regarding the interruption in the Hollands' use of the easement fails.

¶49 In sum, under our case law a prescriptive use is interrupted where the prescriptive user alters the mental or physical nature of his or her use of the easement. So a prescriptive use is interrupted where a prescriptive user submits to the rights of the landowner or ceases to use the prescriptive easement. Because the Harrisons fail to point to any evidence that the Hollands submitted to the Harrisons' ownership of the easement or that the Hollands stopped using it, the district court did not err in concluding that the use of the easement had not been interrupted.

## II. We Affirm the District Court's Determination That the Hollands' Prescriptive Use Was Adverse Rather Than Permissive

¶50 The Harrisons also argue that the district court erred on summary judgment because any use of the road by the Hollands was done with the permission of the original owner of the Harrisons' lot. But the record evidence does not support this argument.

¶51 Where a prescriptive user "has shown an open and continuous use of the land under claim of right for the twenty-year prescriptive period, the use will be presumed to have been adverse."[37] But the landowner may rebut this presumption by showing that "the use was *initially* permissive."[38] The

---

[36] *Id.*; *see also id.* (explaining that a "dismissed or abandoned action, however, does not toll the running of the statute of limitations"). We note, of course, that landowners are free to defend their property rights through any appropriate legal avenue, including by requesting a preliminary injunction at the beginning of litigation.

[37] *Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998).

[38] *Id.* at 312 (emphasis added).

Harrisons assert that the use in this case was initially permissive, so they have rebutted the presumption of adverseness. In support of this assertion, they point to the declaration of Janice Hawley (now Janice Gustafson), who owned the property when the road was built. But, after considering the undisputed evidence on record, we conclude the Harrisons fail to rebut the presumption of adverseness. They fail for two reasons.

¶52 First, it is undisputed that the road was created by Manuel Torres, the Hollands' predecessor-in-interest, without Ms. Hawley's knowledge or authority. Although Ms. Hawley states, in her declaration, that the road was used "pursuant to permission from [her]," she also admits that she "neither knew of nor authorized the creation of the road in advance." So the record clearly demonstrates that the road was created and initially used by the Hollands' predecessor-in-interest without Ms. Hawley's permission.

¶53 And there is no evidence that Mr. Torres or the Hollands ever accepted Ms. Hawley's permission. As our discussion of the "continuous" element above demonstrates, a landowner's later grant of permission does not interrupt a prescriptive period unless the prescriptive user accepts the permission and thereby submits to the ownership of the landowner.[39] Because the record clearly demonstrates that the initial use of the property was adverse to Ms. Hawley's rights and there is no evidence suggesting that Mr. Torres or the Hollands accepted Ms. Hawley's permission, Ms. Hawley's testimony does not rebut the presumption of adverseness.[40]

---

[39] RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.16 cmt. f (AM. LAW INST. 2000) ("A use that begins as adverse can be converted to a permissive or subordinate use if the user agrees to accept a license from the landowner, or if the user acts in such a way that the ordinary landowner would believe that the user has accepted the grant of a license to use the land."); *id.* § 2.17 cmt. j (explaining that "the grant of permission to the prescriptive user" does not cause "an interruption unless the user submits to the title of the landowner by accepting the license offered").

[40] Because there is no evidence that Mr. Torres accepted Ms. Hawley's permission, her "permission" is better characterized as acquiescence, which cannot rebut the presumption of
(Continued)

¶54 Second, the Harrisons have failed to rebut the presumption because it is undisputed that Ms. Hawley authorized *Mr. Torres* to use the road only "to take prospective purchasers to the property *for marketing purposes*." But there is no evidence the Harrisons have ever used the road for marketing purposes or sought permission to use the easement for that purpose. So even if Ms. Hawley had given Mr. Torres permission to use the road for marketing purposes before he had begun using the road (and Mr. Torres accepted that permission), that would not have made the Hollands' subsequent use (beginning on August 9, 1996) for residential access permissive. So Ms. Hawley's grant of permission for marketing purposes is irrelevant in this case.

¶55 Because the evidence in Ms. Hawley's declaration fails to rebut the presumption of adverseness created by the Hollands' open and continuous use of the easement for twenty years, we affirm the district court's decision regarding adverseness.

### III. We Hold That the Jury Instruction Was Erroneous

¶56 The Harrisons also argue that one of the jury instructions was erroneous because the instruction failed to instruct the jury that the scope of the easement was limited to its historical use. We agree.

¶57 As we explain in our decision in *SRB Investment Co. v. Spencer*,[41] a prescriptive easement is defined by its type (or purpose) and by its scope. The type of easement should be defined broadly by the purpose for which it was historically used during the prescriptive period. In this case, the historical purpose of the easement was to access the Hollands' property. In contrast, a prescriptive easement's scope should be defined with particularity based on the nature or extent of that historical use.[42] The historical purpose and scope of the prescriptive use limit both

---

adverseness. *See Judd v. Bowen*, 2017 UT App. 56, ¶ 25, 397 P.3d 686 (explaining that "mere acquiescence" does not rebut the presumption of adverseness).

[41] 2020 UT 23, ¶ 10, ---P.3d---.

[42] *Id.*

the extent of the easement right granted as well as the physical boundaries of the easement itself.[43]

¶58 The historical purpose for which an easement was used limits the prescriptive right because an easement "for one purpose gained by user cannot be turned into a[n] [easement] for another purpose if the latter adds materially to the burden of the servient estate."[44] And the historical scope of an easement limits the prescriptive right because the prescriptive right "cannot be enlarged to place a greater burden or servitude" on the servient estate.[45] In other words, the scope of a prescriptive easement is limited by the burden historically imposed on the servient estate during the prescriptive period.[46] For this reason, the prescriptive

---

[43] *Whitesides v. Green*, 44 P. 1032, 1033 (Utah 1896); *see also Big Cottonwood Tanner Ditch Co. v. Moyle*, 174 P.2d 148, 158 (Utah 1946) ("It is elementary that the use of an easement must be as reasonable and as little burdensome to the servient estate as the *nature* of the easement and its *purpose* will permit." (emphases added) (citation omitted)).

[44] *Nielson v. Sandberg*, 141 P.2d 696, 701 (Utah 1943) (citation omitted).

[45] *Id.* ("The use during the prescriptive period is the only indication of the nature and extent of the right acquired. The servient estate can only be subjected to the easement to the extent to which the easement was acquired, and the easement owner cannot change this use so as to put any greater burden upon the servient estate." (citation omitted)).

[46] In *SRB Investment Co.*, we discussed factors that are relevant in defining the scope of a prescriptive easement. 2020 UT 23, ¶ 38. We explained that in almost every case courts should consider "the physical dimensions of the prescriptive use, the frequency and intensity of the use, and the effect of the use on the aesthetic and economic value of the property." *Id.* We also explained that "courts may also consider the subjective purpose for using the easement, as well as the nature of the use of the dominant estate, but only to the extent those factors are helpful in determining the nature of the burden on the servient estate." *Id.* Finally, we explained that, "in determining the scope of a prescriptive right, courts should take a flexible approach that permits changes of use
(Continued)

user may not acquire a right that "places a greater burden on the [landowner]" than was placed through the entirety of the prescriptive period.[47] With these principles in mind, it is clear that the instruction in this case failed to properly instruct the jury regarding the scope of the easement because it allowed the jury to define the scope of the easement in a way that imposed a greater burden on the Harrisons' property than had been imposed historically.

¶59 Jury instruction number twenty-seven, the instruction at issue in this case, informed the jury that all "elements of a claim of prescriptive easement" had been met, and that the Hollands had acquired a prescriptive easement across the Harrisons' property "to access their own property." The instruction then stated the following:

> What remains for [the jury] to decide is the width of the easement that is necessary for the [Hollands] to access their property. [The jury] ha[s] heard testimony about the nature of the roadway during the 20 years of use, as well as a survey of the current shape and location of the roadway.
>
> [The jury] should determine what is reasonably necessary, from the facts and circumstances of this case, for [the Hollands] to access their property, taking into account the historic[al] use and shape of the roadway during its 20 years of use. [The jury] may express [its] decision in terms of the survey, or by determining the width of the easement.

This instruction errs because it treats the nature and extent of the twenty-year historical use as a factor in determining the scope of the easement, rather than as the ultimate question to be decided. It does this in both instances where historical use is mentioned.

¶60 First, the instruction reminds the jury that they "heard testimony about the nature of the roadway during the 20 years of use, as well as a survey of the current shape and location of the roadway." In this way, the instruction placed evidence of

---

so long as those changes do not materially burden the servient estate or materially interfere with the prescriptive right." *Id.*

[47] *Big Cottonwood Tanner Ditch Co.*, 174 P.2d at 164.

historical use on equal terms with evidence of "the current shape and location of the roadway." This distorted the jury's task and suggested that it could grant an easement exceeding the historical scope of use (and the burden imposed on the Harrisons' property) if it believed it "necessary" to access the Hollands' property.

¶61 Second, the instruction requires the jury to "determine what is reasonably necessary . . . for [the Hollands] to access their property, *taking into account* the historic[al] use and shape of the roadway during its 20 years of use." Again, this language distorted the jury's task. It did so by treating the historical nature of the use merely as a factor in the scope analysis rather than the ultimate question to be decided.

¶62 So the jury instruction in this case is erroneous because, rather than requiring the jury to determine what was reasonably necessary for the Hollands to continue their *historically* established use, it required the jury to determine what was reasonably necessary for the Hollands to access their property, with historical use being just one factor in that determination. And this error prejudiced the Harrisons.

¶63 Although it is unclear from the record how wide the road in this case was at the beginning of the prescriptive period, it is clear that the road was expanded somewhat in 2008. This indicates that the width of the road at the time of trial was wider than the "historical" width of the road. Despite this evidence, the jury appears to have awarded the Hollands an easement that is wider even than the width of the road at the time of trial.[48] And, on the special verdict form, the jury stated that it felt this width was appropriate so that it would be "consistent with other easements in [the] Subdivision." This suggests that the jury's prevailing concern was to find a "reasonable" width rather than a width that would reasonably allow the Harrisons to continue their "historical" use.

---

[48] Mr. Harrison estimated the width of the road in 2016 to be about thirty feet, but the jury awarded an easement forty feet wide.

¶64 Accordingly, we hold that the jury instruction was erroneous and that the error prejudiced the Harrisons. For this reason, we remand for a new trial with a corrected instruction.[49]

## IV. We Affirm the District Court's Decision to Admit Testimony of the Hollands' Expert

¶65 Next, the Harrisons argue the district court erred in admitting testimony of the Hollands' retained expert, Mr. Blake. They argue that Mr. Blake's testimony should have been excluded, under rule 702 of the Utah Rules of Evidence, because Mr. Blake had failed to reliably apply his expertise to the facts of this case. They also argue that the district court should have excluded Mr. Blake's testimony, under rule 401 of the Utah Rules of Evidence, because it was irrelevant. But after considering the record evidence, we conclude that the district court did not abuse its discretion in finding that Mr. Blake had reliably applied his

---

[49] Additionally, we note that, in their brief, the Harrisons argue that the "reasonably necessary" language is unsupported by and contrary to law. Although we agree that, as it was used in this case, the "reasonably necessary" language did not correctly describe the law, we disagree that this language, when used in the proper context, is unsupported by our case law.

We have explained that in some cases the scope of a prescriptive easement is a "question of reasonable necessity." *Id.* at 158 (noting that while the "substance of the easement is shown by the usage," "the form [of the easement] is a question of reasonable necessity"). But a determination of "reasonable necessity" need only be made in cases where there is no better evidence of the nature and extent of the historical use of the easement. So, for example, in a case where a prescriptive user has historically used a road across another's property for the purpose of accessing a camping site with a truck and camping trailer, but the scope of the easement is unclear, the fact finder could properly determine the physical dimensions of the easement based on what would be reasonably necessary to transport a truck and camping trailer across the property. But in no event should such a determination lead the fact finder to find, as it appears to have found in this case, that the width of the easement is wider than it was at any point during the prescriptive period.

expertise to the facts in this case and in finding that the evidence was relevant.

*A. Mr. Blake's methods were reliably applied to the facts of this case*

¶66 The district court did not abuse its discretion in finding that Mr. Blake reliably applied his expertise to the facts of this case. The Harrisons do not challenge Mr. Blake's credentials as a land surveyor nor do they contend that his survey methodology was flawed or incorrectly performed when he visited the properties at issue. Instead, they argue that by measuring the scope and extent of the road, rather than the scope and extent of the prescriptive easement based on historical use, Mr. Blake did not reliably apply his methodology to the facts of this case. We disagree.

¶67 In 2016, Mr. Blake performed a survey of the road crossing the Harrisons' property. At trial, Mr. Blake testified regarding this survey. In other words, Mr. Blake testified regarding the dimensions of the road crossing the Harrisons' property in 2016. Significantly, Mr. Blake did not purport to testify regarding the historical dimensions of the road. Rather, his testimony was limited to describing the process by which he surveyed the road in 2016. In fact, he informed the jury that he had not looked at historical photographs of the road, had not seen the road in the past, and did not "have any information at all on where that road went or how big it was in 1996." Thus, Mr. Blake's expert testimony was limited to providing evidence regarding the dimensions of the road in 2016.

¶68 The Harrisons argue that Mr. Blake's testimony was unreliably applied to the facts of this case because he made no attempt to adjust the measurements of his 2016 survey "based on representations or evidence from any source concerning the original scope and course of the roadway." But this argument appears to be based on a key misunderstanding of Mr. Blake's expert testimony: Mr. Blake testified regarding the dimensions of the *road* in 2016, not the dimensions of the *prescriptive easement* based on its historical use. The dimensions of the road presented a factual question to which Mr. Blake's expert testimony provided valuable insight. But the dimensions of the prescriptive easement presented a legal question for the jury to answer pursuant to the legal instructions provided by the district court.

¶69 In challenging Mr. Blake's testimony for failing to account for the historical usage of the road, the Harrisons suggest

that the only admissible purpose of Mr. Blake's testimony would have been to opine on the ultimate issue to be decided in the case. This is incorrect. An expert witness is not required to offer an opinion directly on the ultimate issue in the case.[50] And, as we discuss in subsection B, Mr. Blake's testimony regarding the physical dimensions of the road in 2016 provided helpful information to the jury. So, by offering evidence of the physical dimensions of the road as it existed in 2016, Mr. Blake's testimony was not unreliably applied to the facts of this case.

*B. Mr. Blake's methods were relevant under the permissive standard of rule 401 of the Utah Rules of Evidence*

¶70 The district court also did not abuse its discretion in finding, under rule 401, that Mr. Blake's testimony was relevant. The Harrisons argue that Mr. Blake's testimony regarding the physical dimensions of the road is "of no consequence in determining the scope of a prescriptive right which, by law, must have ripened (if at all) during a 20-year period preceding the filing of this lawsuit." But this argument fails because evidence regarding the scope and extent of the road at the end of the twenty-year prescriptive period is relevant under rule 401.

¶71 Under rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." This presents a "very low bar" for the admission of evidence.[51] And under this low bar, evidence regarding the scope and extent of the road at the end of the twenty-year prescriptive period is relevant to the ultimate issue in this case.

¶72 In this case, the ultimate issue is the scope of the Hollands' prescriptive easement. To assist the jury in making this determination, the parties presented evidence regarding the physical dimensions of the easement at the beginning, in the middle, and at the end of the prescriptive period. Included in this

---

[50] In fact, as we discuss in Part V of this opinion, expert testimony may be excluded if it crosses the line into impermissible legal opinion.

[51] *State v. Richardson*, 2013 UT 50, ¶ 24, 308 P.3d 526 (internal quotation marks omitted).

evidence was testimony that the road had been expanded at some point during the twenty-year prescriptive period. Because the road had been expanded, Mr. Blake's testimony regarding the physical dimensions of the road at the end of the twenty-year period could not reliably provide the sole basis for the jury's determination regarding the scope of the easement. But this does not mean that Mr. Blake's testimony did not provide any relevant information to the jury.

¶73 While Mr. Blake's testimony may be of limited relevance when compared to more direct evidence regarding the scope of the easement at the beginning and in the middle of the prescriptive period, it nevertheless overcomes the low bar for relevance under rule 401. The testimony is relevant because it provided the jury with the upper limits of the permissible scope of the easement. In other words, by testifying about the physical dimensions of the road across the Harrisons' property in 2016, Mr. Blake provided the jury with a clear limit to what it could find regarding the width of the prescriptive easement. In this way, Mr. Blake's testimony regarding the scope of the road in 2016 provided probative information regarding a fact that was of consequence in the litigation. Accordingly, the district court did not abuse its discretion in finding Mr. Blake's testimony to be relevant.

¶74 In sum, we affirm the district court's decision to admit Mr. Blake's expert testimony because the court did not abuse its discretion in finding Mr. Blake's testimony reliable and relevant.

## V. We Affirm the District Court's Decision to Exclude Testimony of the Harrisons' Rebuttal Expert

¶75 Finally, the Harrisons argue the district court erred in excluding the rebuttal testimony of their expert, Mr. Bunker. Once again, we disagree.

¶76 In reviewing "the exclusion of evidence, we grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion."[52] And we will not find that a district court abused its discretion "unless the ruling

---

[52] *Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 43, 221 P.2d 205 (citation omitted).

was beyond the limits of reasonability."[53] In this case, the court excluded Mr. Bunker's testimony because it found the testimony would usurp the court's role in instructing the jury regarding the scope of a prescriptive easement. We cannot say this ruling went beyond the limits of reasonability.

¶77  In the Harrisons' expert designation for Mr. Bunker, they stated that Mr. Bunker would testify "to the procedure for determining the location of a prescriptive easement." At trial, the Harrisons explained that the purpose of Mr. Bunker's testimony would be to point out that "Mr. Blake's survey was not based on historic[al] use of the easement claimed by [the Hollands]." And in their brief, they explain that "Mr. Bunker was prepared to address, as a qualified land surveyor whose credentials matched Mr. Blake's own, why Mr. Blake's approach to establishing the centerline of the supposed prescriptive easement was flawed."

¶78 As with their argument regarding the admissibility of Mr. Blake's expert testimony, this argument appears to be based on a key misunderstanding of this testimony. As we discussed above, Mr. Blake testified regarding the dimensions of the *road* in 2016, not the dimensions of the *prescriptive easement* based on its historical use. So the dimensions of the *road* presented a factual question to which Mr. Blake's expert testimony provided valuable insight, but the dimensions of the *prescriptive easement* presented a legal question for the jury to answer based on the legal instructions provided by the district court. Because the Harrisons repeatedly state that Mr. Bunker would testify regarding the dimensions of the prescriptive easement, rather than the dimensions of the road, it is reasonable to conclude that Mr. Bunker's testimony might usurp the court's role in instructing the jury regarding the legal requirements of prescriptive easements. This provides adequate ground for exclusion.

¶79 We have explained that "[o]pinion testimony is not helpful to the fact finder when it is couched as a legal conclusion. These extreme expressions of the general belief of the expert witness tend to blur the separate and distinct responsibilities of the judge, jury, and witness."[54] Because the Harrisons' statements

---

[53] *Id.* (citation omitted) (internal quotation marks omitted).

[54] *Steffensen v. Smith's Mgmt. Corp.*, 862 P.2d 1342, 1347 (Utah 1993).

regarding the purpose of Mr. Bunker's testimony suggest that Mr. Bunker would have couched his testimony in legal terms, it was reasonable for the court to find that the purpose of Mr. Bunker's testimony was to instruct the jury regarding what could and could not be considered as part of the jury's prescriptive easement determination. For this reason, the court did not err in concluding that Mr. Bunker's testimony would usurp its role in providing those instructions.

## Conclusion

¶80 Because the district court did not err, on summary judgment, in ruling that a prescriptive easement had formed, we affirm its summary judgment decision. Additionally, we affirm the district court's decisions regarding the admissibility of the parties' respective expert witnesses because neither decision constituted an abuse of discretion. But, because the court incorrectly instructed the jury regarding the scope of the prescriptive easement, we remand for a new trial with a correct jury instruction.

———————