2021 UT App 76

# THE UTAH COURT OF APPEALS

M.N.V. HOLDINGS LC,
Appellant,
*v.*
200 SOUTH LLC,
Appellee.

Amended Opinion[1]
No. 20200626-CA
Filed July 9, 2021

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 190909142

Scott O. Mercer and J. Adam Knorr,
Attorneys for Appellant

Greggory J. Savage and Gregory S. Roberts,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and DAVID N. MORTENSEN
concurred.

HARRIS, Judge:

¶1     M.N.V. Holdings LC (MNV) claims to own a prescriptive easement across property owned by 200 South LLC (Developer), and filed a lawsuit seeking recognition of that easement. The district court dismissed MNV's suit on summary judgment, and MNV now appeals. We reverse and remand.

---

1. This Amended Opinion replaces the Opinion in Case No. 202000626-CA, issued on June 10, 2021. After our previous opinion issued, MNV filed a petition for rehearing. We grant the petition, and hereby amend footnote 9 as requested.

BACKGROUND

¶2    Developer recently purchased two contiguous parcels of property (the Property) on the northwest corner of 200 South and State Street in downtown Salt Lake City. Over the past few decades, the Property has been occupied by a fast-food restaurant and a surrounding parking lot. However, Developer has received approval from municipal authorities to construct a high-rise apartment building, known as Kensington Tower, on the Property, and intends to begin construction in summer 2021.

¶3    MNV owns two contiguous parcels of property (the MNV Parcels) located along State Street immediately to the north of the Property; one of the parcels is occupied by a pawn shop and the other by a retail tobacco specialty store.[2] MNV has owned one of the parcels since 1995, and it purchased the other in 2018. Both of the MNV Parcels have storefronts abutting State Street, but have no area for parking along State Street; the only available parking on the MNV Parcels is found on the west side (that is, the back side) of the parcels, where there is "limited vehicle parking and a garbage collection area." At any given time, "up to four to five" cars can be parked "directly behind [the] building" in this area. But due to the configuration of the MNV Parcels and surrounding properties, the MNV Parcels' rear parking area can be accessed only by crossing someone else's property: either by crossing the Property's parking lot via access from State Street or 200 South, or by crossing another adjacent

---

2. Attached to this opinion as Appendix A is a visual depiction of the four parcels and their location relative to one another, as well as the three paths across the Property that MNV asserts qualify as prescriptive easements.

landowner's property via access from a side street known as Plum Alley.[3]

¶4     MNV asserts—and we assume, given the procedural posture of this appeal, that MNV's assertions are true[4]—that, for at least twenty years, its employees and invitees (collectively, the MNV Invitees) have crossed the Property's parking lot, on more or less a daily basis, to access the small parking area on the west side of the MNV Parcels. However, because the Property lies on a corner, and has at least three different curb cuts providing public access points for automobiles, the MNV Invitees have not always used the exact same route to cross the Property. Sometimes, the MNV Invitees would enter the Property from a State Street curb cut, just north of the fast-food restaurant, and make their way west over the Property parking lot to reach the MNV Parcels' parking area (Route 1). Other times, the MNV Invitees would enter the Property from a curb cut along 200 South, immediately west of the fast-food restaurant, and travel north and then west across the Property parking lot to reach the MNV Parcels' parking area (Route 2). And on still other occasions, the MNV Invitees would enter the Property from its westernmost 200 South curb cut, and travel north across the Property parking lot to reach the MNV Parcels' parking area

---

3. MNV's entitlement to a prescriptive easement over the other neighbor's property, via access from Plum Alley, is not at issue in this case. Nevertheless, MNV asserts that its employees and invitees accessed the MNV Parcels' back parking area from Plum Alley only rarely, if ever.

4. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Pipkin v. Acumen*, 2020 UT App 111, n.1, 472 P.3d 315 (quotation simplified).

(Route 3). While all three of the Routes use different points to access the Property, all three have the same endpoint: the northwest corner of the Property, adjacent to the MNV Parcels' back parking area.

¶5     Usage of the three Routes varied depending on which direction the MNV Invitees were coming from, which direction they were going, and the time of day; sometimes the MNV Invitees would use one Route, and sometimes another. For instance, one MNV employee averred that it was "easier to turn . . . left on 2[00] South than it would be to turn left on State Street," and as a result she would more often use one of the 200 South entry points (Routes 2 and 3), rather than the State Street entry point (Route 1). Another employee stated that he usually turned left onto the Property via the State Street curb cut (Route 1) because he would often "be coming north" via State Street on his commute. And the longtime owner of the pawn shop maintained that customers or vendors bringing "large items" to sell would often use Route 1 to access the MNV Parcels' parking area to deliver their items. But despite variations in use by particular individuals on particular days, the MNV Invitees— viewed in the aggregate—claim to have used all three Routes interchangeably, regularly, and continuously for over two decades.

¶6     After learning of Developer's plans to construct Kensington Tower, MNV filed this lawsuit in November 2019, seeking a declaratory judgment recognizing the existence of a "prescriptive easement over the [Property] and quiet[ing] title to such easement in favor of MNV." During discovery, several of the MNV Invitees were deposed and testified about their own use, and their observations of others' use, of the Property to access the back side of the MNV Parcels, as described above. After completion of discovery, both parties filed motions for summary judgment. In its motion, MNV asserted that there was "no genuine dispute that MNV me[t] each element of its

prescriptive easement claim," and asked the court to enter judgment in its favor recognizing the easement. For its part, Developer asserted in its motion that MNV had failed, as a matter of law and undisputed fact, "to demonstrate a prescriptive easement that follows a definite and certain path." In essence, it argued that, because the MNV Invitees had used three different pathways over the years, rather than just one, MNV could not prove continuous use over any particular route.

¶7    After full briefing and argument, the district court granted Developer's motion and denied MNV's. The court determined that the MNV Invitees' use of the Property "was not continuous . . . because they used three separate claimed paths to or from the different curb cuts," and concluded that therefore "MNV's prescriptive easement claim fail[ed] as a matter of law."

ISSUE AND STANDARD OF REVIEW

¶8    MNV now appeals the district court's order granting Developer's summary judgment motion.[5] We review a district court's summary judgment ruling "for correctness, giving no deference to the [district] court's decision." *See Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56.

ANALYSIS

¶9    The main question presented by MNV's complaint is whether MNV has acquired a prescriptive easement over the Property. "To attain legal recognition of a prescriptive easement in Utah, the claimant must prove by clear and convincing

---

5. As we interpret its briefs, MNV does not challenge the court's denial of its own motion for summary judgment, and instead asks us only to reverse the court's grant of Developer's motion.

evidence that the claimant's use of another's land" was (1) "open and notorious," (2) "continuous," and (3) "adverse" (4) "for a period of twenty years." *Judd v. Bowen*, 2017 UT App 56, ¶¶ 10, 16–33, 397 P.3d 686 (quotation simplified), *cert. review revoked*, 2018 UT 47, 428 P.3d 1032 (written opinion dismissing previously-granted certiorari petition as improvidently granted); *accord Harrison v. SPAH Family Ltd.*, 2020 UT 22, ¶ 28, 466 P.3d 107. The district court granted Developer's motion for summary judgment, ruling that MNV could not make the necessary showing. In particular, the court grounded its ruling in the second element listed above, and determined that, as a matter of law, MNV could not show continuous use of any particular route for the requisite twenty years. Because the court's ruling was based entirely on its belief that MNV had failed to make the requisite showing on that second element, we focus our analysis on that element.[6]

¶10    The second element requires MNV to show that its use of the Property was "continuous" during the entire twenty-year prescriptive period. *See Judd*, 2017 UT App 56, ¶ 10. The district

---

6. Near the end of its brief, Developer discusses an additional element, and contends that we may affirm the district court's decision on an alternative ground that the court did not consider—that MNV's use of the Property was not open and notorious—and asserts that such a determination is "apparent on the record." (Quoting *Compton v. Houston Cas. Co.*, 2017 UT 17, ¶ 13, 393 P.3d 305.) We recognize that, on remand, the parties and the court may need to analyze whether MNV can make the showing required by that first element, and we make no determination here about whether it will ultimately be able to do so. But it is not apparent, as a matter of law, from the record before us that MNV would not be able to make that showing, and in this case we think it best for the district court to grapple with that question in the first instance.

court determined, as a matter of law, that MNV's use was not continuous because "MNV's use was not confined to a regular route" but instead was dispersed over "three separate claimed paths to or from the different curb cuts." In reaching this conclusion, the district court relied on *Lund v. Wilcox*, 97 P. 33 (Utah 1908), a case in which a prescriptive easement claimant had established a dirt "roadway" over a neighbor's "wild, uncultivated, and unfenced" property, which roadway "practically remained in the same place" over the prescriptive period, except for a portion that was altered to avoid a "washout" that occurred partway through the prescriptive period. *Id.* at 34. Thus, the claimant used one path prior to the washout, then used a somewhat different path after the washout, and needed both time periods to count in order to meet the twenty-year requirement. *Id.* at 34–35. In that case, our supreme court determined that the claimant's change of route during the prescriptive period was "a deviation" that "destroy[ed] the continuity of use required" to establish a prescriptive easement. *Id.* at 35 (also stating that "[t]his change broke the continuity of use by [the claimant]").

¶11    In our view, the district court's reliance on *Lund* was misplaced. In *Lund*, the claimant at no point asserted that he had used both routes during the same time period; rather, he used one route for a period of time, then switched to the other following the washout. *See id.* at 34. But he had not used either of the two routes in question for a lengthy enough period of time to satisfy the twenty-year requirement for either one individually, and was therefore trying to combine his years of use over the first route with his years of use over the second route. *See id.* at 34–35. This the court refused to allow, stating that "a prescriptive right of way cannot be acquired by tacking together two distinct periods of use of two separate ways, though one was abandoned for the other with the consent of the landowner, and the two periods together would amount to the prescriptive time requisite to give a prescriptive right of way." *Id.* at 35 (quotation

simplified).[7] However, the situation presented here is fundamentally different than the situation presented in *Lund*: in this case, MNV claims to have used all three Routes for the requisite twenty-year period, and at no point—whether due to a "washout" or for any other reason—does it appear to have abandoned its use of any of the Routes. Thus, *Lund* simply does not speak to the question at hand: whether a claimant can satisfy the second element of the prescriptive easement test by continuously using multiple distinct routes across the servient estate for the duration of the relevant prescriptive period.

¶12    We are unaware of any other Utah authority that speaks to this question. But although Utah appellate courts have

---

7. As discussed in *Lund v. Wilcox*, chronological "tacking" of this nature, from one path to another, is generally not allowed. *See* 97 P. 33, 35 (Utah 1908). However, where an easement claimant makes only "slight deviations" to a path over time, continuity is maintained because the route did not actually change, and therefore no tacking is required. *See Warsaw v. Chicago Metallic Ceilings, Inc.*, 676 P.2d 584, 587 (Cal. 1984) (stating that "the line of travel over a roadway which is claimed by prescription . . . must be certain and definite," but that "slight deviations from the accustomed route will not defeat an easement" (quotation simplified)). The outcome of *Lund* indicates at least an implicit ruling by the court that the differences between the pre-washout route and the post-washout route were too great to allow the two paths to be considered the same route. *See* 97 P. at 35. Similarly, in this case—although each time a particular path was taken there might have been some "slight deviations" in the precise line of travel—the differences between the three Routes themselves are too great to consider any one Route a mere "slight deviation" from another; the three Routes therefore constitute three distinct paths. But as noted, MNV does not seek to apply chronological "tacking" to prove its claim.

apparently not yet had opportunity to encounter this situation, courts from other states have. And those courts have determined that a claimant's use of "two or more routes" over the servient estate for the duration of the prescriptive period does not defeat the claim, but merely necessitates "the need for particular findings concerning the nature, frequency and duration of the use of *each route*." *See Roberts v. Swim*, 784 P.2d 339, 344 (Idaho Ct. App. 1989) (emphasis added); *see also Leichtfuss v. Dabney*, 2005 MT 271, ¶¶ 10–16, 35, 35 nn.6–7, 122 P.3d 1220 (explaining the historic use of two separate routes over the servient estate "for ingress and egress" to and from the dominant estate for the prescriptive period, and considering the existence of an easement over one route separately from the other); *Tilkov v. Duncan*, Nos. 69615-7-I, 70092-8-I, 2014 WL 3741629, at *2, *4 (Wash. Ct. App. July 28, 2014) (considering prescriptive easement claims over two adjacent pathways across the same property to be separate claims and concluding that res judicata did not bar consideration of the instant easement claim on the second path because the "claims in the two cases almost certainly involve different evidence and infringement of different rights because the claims relate to different paths"); *cf. Jordan v. Bailey*, 944 P.2d 828, 832–34 (Nev. 1997) (per curiam) (separately considering each of three claims for prescriptive easements over three distinct routes across the same servient property, and concluding that the elements had not been met for one of the claims but had for the other two).

¶13    Three such cases are particularly instructive. First, in *Five Forks Hunting Club, LLC v. Nixon Family Partnership*, 584 S.W.3d 685 (Ark. Ct. App. 2019), a lower court recognized "two separately defined prescriptive easements" over both a road and a ditch across the servient estate, finding that the claimant used a road (by car or foot) to access its property most of the time, but also regularly and continuously used a ditch (by boat) whenever the servient property was flooded. *Id.* at 688, 692–93. On appeal, the servient estateholder argued that the lower court had

committed error by recognizing easements over both the road and the ditch, but the appellate court was unconvinced, determining that the lower court's ruling was proper, and that the claimant had demonstrated continuous use of both routes, as conditions dictated, and was therefore entitled to an easement over both of them. *Id.* at 699–700. Similarly, in *Roberts v. Swim*, the claimant presented evidence that he had continuously "used two or more routes" to access his ranch via "two creek roads" across the servient estate. *See* 784 P.2d at 341–42, 344. The appellate court remanded the matter back to the lower court with instructions to analyze each claimed route separately, stating that such "circumstances . . . suggest the need for particular findings concerning the nature, frequency and duration of the use of each route for which a claim of easement is made." *Id.* at 344; *see also id.* at 345 (stating that, on remand, the lower court should "make a determination" about "whether [the claimant] used one line of travel *or both* for the requisite prescriptive period" (emphasis added)). Finally, in *Vivian Scott Trust v. Parker*, 2004 S.D. 105, 687 N.W.2d 731, the court was presented with facts strikingly similar to those at issue here: the claimant presented evidence that its invitees had continuously used two entrances and two routes to cross a parking lot on the servient estate to reach its property. *Id.* ¶ 2. The lower court recognized a prescriptive easement in that situation, and the appellate court affirmed, despite the fact that two routes had been used to cross the parking lot during the prescriptive period. *Id.* ¶¶ 5–8.

¶14 We find the analysis applied in these cases not only persuasive, but also consistent with existing pronouncements of Utah appellate courts regarding the "continuous" element of the prescriptive easement test. For instance, we have stated that

> the continuity required to establish a prescriptive easement does not entail frequent or constant use. Rather, all that is necessary is that the use be as

often as required by the nature of the use and the needs of the claimant. Thus, the frequency of use is not critical, and continuity can be established if the claimant can show that he made use of the landowner's property whenever desired or required under the circumstances.

*Judd v. Bowen*, 2017 UT App 56, ¶ 16, 397 P.3d 686 (quotation simplified), *cert. review revoked*, 2018 UT 47, 428 P.3d 1032. In addition, our supreme court has recognized that "there 'are two aspects to the requirement that a prescriptive use be continued for the prescriptive period: one mental, the other physical.'" *Harrison v. SPAH Family Ltd.*, 2020 UT 22, ¶ 29, 466 P.3d 107 (quoting Restatement (Third) of Prop.: Servitudes § 2.17 cmt. i (Am. Law Inst. 2000)). And the Restatement comment relied on in *Harrison* further clarifies that "[t]he physical aspect . . . does not require that actual physical use be made constantly, or even frequently." Restatement (Third) of Prop.: Servitudes § 2.17 cmt. i.[8] Indeed, "[s]easonal uses, intermittent uses, and changing uses

---

8. Developer points us to comment h in this Restatement section, and specifically its statement that "[c]laims for rights of way must be based on uses that are substantially confined to a regular route." *See* Restatement (Third) of Prop.: Servitudes § 2.17 cmt. h (Am. Law Inst. 2000). However, comment h relates to the "open and notorious" element of a prescriptive easement claim, not the "continuous" element, *compare id.*, *with id.* cmt. i, and the reason offered for the quoted rule is "so that the landowner [can] be aware that an adverse use is being made," consistent with the "open and notorious" element, *see id.* cmt. h. As noted, *supra* note 6, this opinion generally does not concern itself with the "open and notorious" element. And in any event, the three Routes at issue here are all distinct regular paths that can be plotted on a map, *see* Appendix A; *see also supra* note 7, and MNV's use was confined to the three discrete Routes and

(continued…)

all may meet the continuity requirement so long as they are open or notorious." *Id.*; *accord Five Forks*, 584 S.W.3d at 699–700 (recognizing the ability to establish continuity over two separate routes when the claimant shows that it "historically used either [route], depending on the circumstances and conditions").

¶15 Accordingly, we conclude that, under Utah law, a claimant's use of multiple distinct routes over the servient estate does not, by itself, operate to defeat the claimant's ability to meet the "continuous" element of the prescriptive easement test. In such a situation, the court should analyze each claimed route on its own merits, and if the claimant can establish continuous use of at least one route for the requisite prescriptive period, then the continuity element will have been met for at least that route.

¶16 However, even if a claimant is able to show continuous use of more than one route over the servient estate for the requisite number of years, that claimant is not necessarily entitled to multiple easements. In that situation, the court may, as a matter of equity, choose to designate only one of the proven routes as the defined prescriptive easement, or redefine the path

---

(…continued)

was not "indiscriminate over an entire area," *see* 28A C.J.S. *Easements* § 32 (June 2021 update) (stating that the prescriptive easement requirements are "not satisfied when the use is indiscriminate over an entire area"). Therefore, despite Developer's argument to the contrary, comment h is not inconsistent with our conclusion that multiple "regular route[s]" may be alleged, each of which the claimant uses consistently depending on the circumstances, "so long as there is sufficient continuity that the servient owner would not reasonably be led to believe that one use had been abandoned and a new one begun." *See* Restatement (Third) of Prop.: Servitudes § 2.17, cmt. h.

to avoid unduly burdening the servient estate.[9] *See, e.g.*, *Bedik Corp. v. Herrick Road Holdings LLC*, 90 N.Y.S.3d 839, 840, 843 (N.Y. Sup. Ct. 2018) (finding that the plaintiff had established "an easement by prescription over" the servient estate through use "by trucks delivering and receiving goods to and from" the plaintiff's property, and recognizing that, "given the varying paths used by the trucks, equity dictates . . . that the right-of-way be limited to the area necessary for the purpose of the easement"); *see also Five Forks*, 584 S.W.3d at 693–94, 699–700 (affirming a court's equitable ability to grant access via either of two routes, "depending upon the circumstances and conditions"). After all, easement claims are governed by equitable principles, *see Jensen v. Brown*, 639 P.2d 150, 151 (Utah 1981) (recognizing that a prescriptive easement claim "is a suit in equity"), *abrogated on other grounds by RHN Corp. v. Veibell*, 2004 UT 60, 96 P.3d 935, and courts may apply such principles to limit the scope of the defined easement or otherwise accommodate the servient estate, *see SRB Inv. Co. v. Spencer*, 2020 UT 23, ¶¶ 21 n.32, 22, 463 P.3d 654 ("Even though courts will almost always consider the physical dimensions of the land used, as well as the frequency and intensity of that use, the ultimate criterion in determining the scope of a prescriptive easement is that of avoiding increased burdens on the servient estate. So courts should consider any and all factors that may contribute to that burden." (quotation simplified)).

---

9. Indeed, MNV is only asking for any one of the Routes to be decreed as the designated route in its easement, stating in its brief that it "would be satisfied with a single, defined access route." And at oral argument before this court, MNV reiterated that it only "need[s] to access [its] parking lot via one path," and is willing to "accommodate" changes to the designated route, as long as Kensington Tower is built "in such a way that [MNV] can continue to have [its] access."

CONCLUSION

¶17　A prescriptive easement claimant who has used more than one distinct path across a servient estate is not disqualified from meeting the second element of the prescriptive easement test—continuity—merely because it used multiple paths. Each distinct path or route should be evaluated individually, on its own merits. The district court therefore erred by determining as a matter of law that MNV is unable to demonstrate the requisite continuity. Because that was the only basis upon which the court granted Developer's motion and dismissed MNV's claim, we reverse the grant of summary judgment in Developer's favor and remand the case for further proceedings consistent with this opinion.[10]

¶18　To be clear, we stop short of conclusively determining that MNV can demonstrate the requisite continuity—or any other element of the prescriptive easement test—at trial; as noted above, *see supra* note 5, MNV has not challenged the district court's denial of its motion for summary judgment. We hold only that MNV's prescriptive easement claim should not have been dismissed as a matter of law on summary judgment on the

---

10. We are aware of MNV's motion, filed with this court on April 26, 2021, asking us, "pending [our] decision" in this case, "to stay [Developer]'s construction efforts to avoid a mootness issue." However, now that we have decided the case, the motion to stay filed with this court is now itself moot, and any decision about staying construction of Kensington Tower will need to be made by the district court in the first instance. *See Koyle v. Davis*, 2011 UT App 196, ¶ 7, 261 P.3d 100 (per curiam) (recognizing that our resolution of a case on appeal "renders the motion to stay moot"); *see also* Utah R. App. P. 8(a) (stating that motions to stay a judgment pending appeal "must ordinarily be made in the first instance in the trial court").

basis offered by the district court. The determination of whether a claimant's "use was continuous . . . require[s] [a] highly-factual inquir[y]," *Judd v. Bowen*, 2018 UT 47, ¶ 15, 428 P.3d 1032, and a decision as to whether MNV has met its burden to show continuity will require "particular findings concerning the nature, frequency and duration of the use of each route," *see Roberts v. Swim*, 784 P.2d 339, 344 (Idaho Ct. App. 1989). On remand, the court will need to engage in the necessary factual inquiry and make particular findings with regard to each Route before it can be established that MNV continuously used any (or all) of the three Routes.

———————

